The Chicago and Alton Railroad Company

*v.*

David Becker, Admr.

1. Presumption—*in support of verdict, not in opposition to record.* Where a bill of exceptions purports to contain all the evidence, this court can not presume other testimony was given to support the verdict. Such presumptions are indulged only when the bill of exceptions does not state that it contains all the evidence.

2. Negligence—*must be proximate cause of injury.* It is a principle of jurisprudence, under both the civil and common law, that, to entitle a party to recover for damages alleged to have been sustained in consequence of the negligence of another, there must not only be negligence in fact, but it must have been the proximate cause of the injury.

3. Same—*contributory.* Based upon the leading and governing principle that the defendant's negligence must be the proximate cause of the injury, is the common law rule, that, although there was negligence on the part of the defendant, yet, if there was also intervening negligence on

the part of the plaintiff, but for which latter the misfortune of the plain- tiff would not have happened; or, if the plaintiff, by the exercise of ordi- nary care and caution, could have avoided the consequences of the defend- ant's negligence, and he fails to exercise that care and caution, he can not recover.

4.  SAME—*rule of contributory negligence subject to exceptions.* This gen- eral rule, like most others, admits of exceptions and qualifications, as, for instance, where the party injured might have avoided injury by the exer- cise of ordinary care and caution; but as a direct and immediate result of the defendant's negligence, he is placed in a position of compulsion and sudden surprise, bereft of independent moral agency and opportunity of reflection, the law will not hold the injured party responsible for con- tributory negligence.

5.  SAME—*contributory negligence will not prevent liability in all cases.* There must be a causal connection between the plaintiff's negligence and the injury to relieve the defendant from liability for his negligence. The plaintiff, as a general rule, must be a person to whom the alleged contrib- utory negligence is imputable, excluding, therefore, persons distracted by sudden terror, persons of unsound mind, drunkards, and persons who, from their tender age, are wanting in the requisite capacity to exercise discretion.

6.  SAME—*capacity and discretion of children to exercise care, a question of fact.* There is no inflexible rule of law by which to determine the ca- pacity of children for observing and avoiding danger, as affecting the question of contributory negligence in case of an injury to them, but it is a question of fact in each case for the jury, to be determined from the facts and circumstances in evidence, the law holding them responsible only for the exercise of such measure of capacity and discretion as they possess.

7.  SAME—*facts of particular case.* In this case, the deceased was a boy of the age of six or seven years, and it appeared that the defendant's train, which ran over and killed him, was not running at an unusual rate of speed, or at a rate prohibited by the ordinance of the town; that the whistle was sounded at the proper place, and a bell kept continuously ringing until the crossing was passed where the accident occurred; that the deceased heard the whistle, and, in company with two other boys, started for the crossing; that the other two crossed over the track, and the deceased, in attempting to follow, when the engine was but about sixty feet from him, stumbled and fell upon the track, and that those in charge of the train used every exertion to check the train, which was a heavy freight train, but could not in time to avoid the accident: *Held,* in an ac- tion by the administrator of the deceased against the company to recover damages for the killing, that a recovery by the plaintiff could not be sus- tained.

8. MEASURE OF DAMAGES—*in action to recover for causing death of party through negligence.* In an action by the personal representative of one killed by a railroad train, against the company, to recover damages for the killing, the court instructed the jury, in case they found the defendant guilty, to assess such damages as they believed would be right: *Held,* that the instruction was erroneous, as by it the jury were at liberty to include damages for mental suffering and anguish of parents, while the statute limits the damages to compensation with reference to the pecuniary injuries resulting to the next of kin.

APPEAL from the Circuit Court of Logan county; the Hon. THOMAS F. TIPTON, Judge, presiding.

This was an action on the case, by David Becker, administrator of the estate of Frederick Becker, deceased, against the Chicago and Alton Railroad Company. The material facts of the case are stated in the opinion of the court.

Messrs. WILLIAMS, BURR & CAPEN, for the appellant.

Mr. J. T. HOBLIT, and Messrs. BEASON & BLINN, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

Frederick Becker, being a boy of between six and seven years of age, was run over and instantly killed, September 30, 1872, at the city of Atlanta, in this State, by one of appellant's freight trains, at the time passing through from the north.

This action was brought under the statute of 1853, in the Logan circuit court, by appellee, as administrator, to recover such damages as might be deemed a fair and just compensation with reference to the pecuniary injuries resulting to the next of kin of deceased, as prescribed by the act giving the right of action. The basis of recovery made by the declaration is, that Frederick, being in the act of crossing appellant's track at a street-crossing, and in the exercise of due care, the train of appellant approached without ringing the

bell or sounding the whistle upon the locomotive, as required by law, and while running at a greater rate of speed than was permitted by the ordinance of the city of Atlanta, in that behalf, by means whereof he was run over by said train and killed.

On the trial upon the general issue, the jury returned a verdict of guilty, and assessed the damages at $2500. The court, overruling defendant's motion for a new trial, gave judgment upon the verdict, and the latter appealed to this court. Error is assigned upon the refusal of the court to grant a new trial, and for giving and refusing instructions.

Under the errors assigned, it is insisted, (1), that the evidence is insufficient to support the verdict; (2), that the court erred in giving the first and second instructions for plaintiff, and refusing the last one asked on behalf of defendant; (3), that the damages are excessive.

The bill of exceptions declares that it contains all the evidence in the case. The defendant's motion for a new trial raised the question as to the sufficiency of the evidence to support the verdict, and whether or not the damages were excessive.

Some of the witnesses observed circumstances which escaped the attention of others, but when the whole evidence is considered, there is really no conflict of any importance in it.

The accident occurred between nine and ten o'clock Sunday morning. There was a station at Atlanta. The train in question was coming from the north; it was a freight train, composed of some twenty cars and a caboose, but it was not the intention to stop the train at that station. It is clear, from the testimony, that the whistle was sounded at or near the whistle-post north of the station. Some of plaintiff's witnesses testify to having heard the bell ring, but could not say, with any degree of positiveness, whether it did or did not ring continuously while the train was coming through the town. There is no negative evidence of any force against the fact,

and there was affirmative testimony that it did ring continuously.

The deceased, being in company with his brother and another boy, both of the latter being older than deceased, were seen sitting on a box in front of a store. As the train approached the station, they left that place and commenced running towards the railroad. The two older boys, getting ahead of deceased some forty or fifty feet, crossed over the track on which the train was coming, and one of them got upon the steps or platform of one of the cars of the train. When deceased reached the track he was looking north, and could not have failed to see the train, which was then within about sixty feet of where he was. Instead of waiting until it passed, he attempted to cross, and, in doing so, stumbling, he fell upon the rail, was run over and instantly killed. The engineer, discovering him as he fell, instantly reversed his engine ; and it is the concurrent testimony of those witnessing the exciting and distressing spectacle, that he did everything in his power, at the time, to avoid the boy's impending fate. He says he could not have stopped the train, it being so heavy, and the boy so near when discovered, so as to have avoided running on to him, if it had been going only at the rate of one mile per hour. He testifies it was, in fact, running only about six miles an hour. Appellee's witnesses give it as their judgment, the train was running at a higher rate, ranging from eight to fifteen miles an hour. None of them, however, give evidence tending to show that it was running at an unusually high and reckless rate of speed. There is nothing in the record to show what rate of speed was prescribed as permissible by any ordinance of the municipal corporation. The bill of exceptions, which purports to contain all the evidence in the case, contains no ordinance or evidence of an ordinance on that subject. Under such a state of the record, this court would not be warranted in presuming, in support of the verdict, something which does not appear in the bill of exceptions. Such presumptions are indulged

only in cases where the bill of exceptions does not state that it contains all the evidence.   In the absence of anything in the bill of exceptions, showing an ordinance prescribing the rate of speed permitted within the corporation, and evidence tending to show a violation of it by appellant's servants, we are unable, after a careful consideration of the evidence in the record, to perceive, without any regard to the testimony tending to show contributory negligence on the part of deceased, any basis in law for the verdict of the jury in this case; for it appears, by the clear weight and preponderance of the evidence, that the whistle was blown at or near the whistle-post north of the station, and the bell rung continuously upon the locomotive, as required by law ; besides, the conduct of the boys shows that, when they started to run towards the track, they knew the train was coming, and that deceased saw it coming before he placed himself in peril before it.   Nor was there any want of care, prudence or diligence to avoid the injury after the deceased was discovered upon the track.   The liability must have for its foundation either some wrongful act, or negligence or default on the part of the defendant or its servants or agents.  No wrongful act is pretended.  Excluding that element from the cause of action, then, in order to show a ground for recovery under the statute, the same ingredients of a cause of action must exist as would have been requisite to a recovery if Frederick Becker had not received a mortal injury, but survived and brought suit in his own name.

It is a general principle of jurisprudence, under both the civil and common law, that, to entitle a party to recover for damages alleged to have been sustained in consequence of the negligence of another, there must not only be negligence in fact, but it must have been the proximate cause of the injury. Much difficulty has been experienced by the courts in making application of that principle, to distinguish between proximate and remote causation ; but there has been still greater difficulty in the conception and application of definite rules

as regards the effect upon the right of recovery of the party injured, when the agency or negligence of the party damaged, or of some third party, intervenes the negligence of the defendant and the injury of the plaintiff, thus breaking the direct connection between the defendant's negligence and plaintiff's injury. The central idea is, that the defendant's negligence must be the proximate cause of the damages. From that idea there has come into recognition the common law rule that, although there was negligence on the part of the defendant, yet, if there was also intervening negligence on the part of plaintiff, but for which latter the misfortune of the plaintiff would not have happened ; or, if the plaintiff, by the exercise of ordinary care and caution, could have avoided the consequences of the defendant's negligence, and he fail to exercise that care and caution, he can not recover, for it would be subversive of the very principle on which the liability of a negligent party rests to permit a person who, by his own negligence, causes damage to himself, to recover compensation for that damage from another. The harm which one brings upon himself, he is to be considered as not having received. So far as his relations to others are concerned, such harm is uncaused. Wharton on Neg. sec. 130.

These general rules, like most others, admit of exceptions and qualifications, often requiring much discrimination in their application to particular cases. Where, for instance, the defendant has been guilty of negligence, but seeks to defend on the ground that the party injured might have avoided the injury by the exercise of ordinary care and caution, it sometimes happens in such cases that, as a direct and immediate cause of the defendant's negligence, the party injured was placed in a position of compulsion and sudden surprise, bereft of independent moral agency and opportunity of reflection. In such a case, it would be against the common judgment of mankind to hold the injured party either morally or legally responsible for contributory negligence. The doctrine of

contributory negligence, in its various phases, has been enunciated in cases so numerous as to render their citation impracticable. But we find a generalized statement of it in a recent work of great merit, where the principal authorities are referred to. It is, simply, that a person who, by his negligence, has exposed himself to injury, can not recover damages for the injury received. The same author says : "The true ground for the doctrine is, that, by the interposition of the plaintiff's independent will, the causal connection between the defendant's negligence and the injury is broken. The principle, however," he says, "must be accepted with the following qualifications: There must be a causal connection between the plaintiff's negligence and the injury. The plaintiff, as a rule, must be a person to whom the alleged contributory negligence is imputable, excluding, therefore, persons distracted by sudden terror, persons of unsound mind, and drunkards, persons deprived of their senses, *infants*. If the defendant is guilty of gross negligence, he can not set up a trifling negligence or inadvertence of the plaintiff as a defense." Wharton on Neg. secs. 300, 301.

By the general term "infants," as one of the classes to whom contributory negligence would not, as a rule, be imputable, the author, as appears by the context, does not mean that all persons under lawful age are to be understood as belonging to such class, but only those who, from their tender age, are wanting in the requisite capacity to exercise discretion. Whether the question of the capacity of children of observing and avoiding danger be considered with reference to contributory negligence on the part of the child injured, or of parents or guardians, it is obvious that no definite rule of law can be laid down which should interfere with the jury judging each case on its own merits and by its particular circumstances. If the child, from its age and experience, be found to have capacity and discretion to observe and avoid danger, it should be held responsible for the exercise of such

measure of capacity and discretion as it possesses. The question is similar, and to be determined by the jury in the same way, from facts and circumstances in evidence, as where the capability of an infant, under the age of fourteen years, to commit crime, is involved in a criminal prosecution at common law against such infant. On the attainment of fourteen years of age, the criminal actions of infants are subject to the same modes of construction as those of the rest of society, for the law presumes them at those years to be *doli capaces*, and able to discern between good and evil. But there is no inflexible rule which governs where the question arises in civil cases whether contributory negligence is imputable. As stated above, it is in each case a question for the jury, to be determined upon the particular circumstances in evidence.

In the light of these principles, imperfectly presented though they be, we are prepared to give our views of the instructions for plaintiff below, complained of by appellant's counsel. They are as follows :

"The court instructs the jury that the law does not require that a boy of six or seven years of age should exercise that degree of diligence that would be required of a grown person. The court therefore instructs the jury that, although they may believe, from the evidence, that the deceased, Frederick Becker, was guilty of a slight degree of negligence, yet, if the jury further believe, from the evidence, that the defendant was guilty of gross negligence and thereby caused the death of said Frederick Becker, the jury should find the defendant guilty, and assess such damages as they believe would be right."

The age, the capacity and discretion of the deceased to observe and avoid danger, were questions of fact to be determined by the jury, and his responsibility was to be measured by the degree of capacity he was found to possess. The first branch of the instruction was erroneous, in assuming facts and drawing conclusions of law from them. When taken in

3—76TH ILL.

connection with what followed in the second branch, the jury would be likely to infer that only slight negligence could be imputed on account of his being a boy of six or seven years of age. Besides, the record shows no evidence upon which to submit the question of gross negligence on the part of defendant.

The last clause directs the jury to "assess such damages as they believe to be right." By this direction, the jury were at liberty to include damages for mental suffering and anguish of parents, while the statute limits the damages to compensation with reference to the pecuniary injuries resulting to the next of kin of deceased.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*