Howes *et al. v.* Rose.

Filed November 26, 1895.

---

No. 1,677.

## HOWES ET AL. *v.* ROSE.

NEGLIGENCE.—*Sale of Poisonous Drug for Harmless One.—Evidence.*
—The mere sale of a poisonous drug to one who asks for a harmless one, is insufficient to show negligence of the druggist in making the sale.

SAME.—*In Sale of a Drug.—When Erroneous Label of Wholesaler Will Not Protect Retailer.*—The label of a harmless drug placed by reputable wholesale dealers on a poisonous drug purchased from them, will not protect from liability a retail dealer, who fails to discover the mistake in handling the drug and putting it into a jar, and who negligently sells it as the harmless drug indicated by the label.

From the Floyd Circuit Court.

*C. L. Jewett, H. E. Jewett, G. H. Voigt* and *E. B. Stotsenburg,* for appellants.

*J. V. Kelso, C. D. Kelso* and *J. K. Marsh,* for appellee.

LOTZ, J.—The appellee, plaintiff below, in her complaint alleged that she was ill and in need of medicine, and applied to the appellants, defendants below, at their place of business, for Rochelle salts, a safe and harmless medicine; that instead of furnishing her said salts, the defendants carelessly and negligently furnished, sold and delivered to her, instead thereof, a quantity of Tartaric acid, a noxious, baneful and poisonous drug, which she administered to herself, believing the same to be Rochelle salts, and suffered pain and injury in consequence thereof.

The special verdict found substantially these facts:

On the 8th day of March, 1894, the plaintiff and defendants were residents of the city of Jeffersonville. The defendants were retail druggists, engaged in conducting the business of a retail and prescription drug store in said city. On the 6th day of March, 1894, the defendants ordered of the firm of Renz & Henry, wholesale druggists and chemists, engaged in business at the city of Louisville, Kentucky, a quantity of a drug known as Rochelle salts. The said Renz & Henry were reputable and established wholesale druggists and chem-

ists, and had been engaged in that business for many years. Upon the receipt of defendants' order, Renz & Henry sent to the defendants a package of white powder, resembling Rochelle salts in appearance, and labelled "Rochelle Salts." The package was received at the defendants' place of business by their clerk, one William Schwamnger. The package was billed on a statement accompanying it as Rochelle salts. The clerk, Schwamnger, was a competent and skilled pharmacist. He opened the package and examined the contents, and, believing the same to be Rochelle salts, placed it in a jar in which Rochelle salts was kept for sale in said store, which jar was labelled Rochelle salts. Rochelle salts is a white powder, and from the appearance of said drug as received, the defendants and their clerk, Schwamnger, could not tell and did not know but that the same was Rochelle salts. On the 8th day of March, 1894, the plaintiff, desiring to administer to herself a dose of Rochelle salts, applied to the defendants at their place of business for ten cents worth of said salts. The defendants' drug clerk, one Henry Voigt, took from the jar labelled Rochelle salts, a portion of the drug purchased of Renz & Henry, and sold and delivered a portion thereof to the plaintiff. At the time the drug was so sold to the plaintiff, the defendants and their clerks believed the same to be Rochelle salts. The plaintiff, believing the drug to be Rochelle salts, dissolved two tablespoonfuls in water and drank the same. The drug so administered by plaintiff was not Rochelle salts, but a drug known as Tartaric acid. Tartaric acid is a white powder resembling in appearance Rochelle salts, and when taken in as large quantities as two tablespoonfuls dissolved in water causes an irritation of the throat and stomach, and a burning sensation and cramps of the stomach. The effect of such drug on the plaintiff was

to cause an irritation of the throat and stomach, and to cause her violent pains in the stomach and abdomen for some time after taking the same, and has caused her health to decline. The plaintiff's damages were assessed in the sum of $200.00.

The appellee moved for judgment in her favor on the finding and the appellants moved for judgment in their favor. The appellee's motion was sustained and appellants' overruled. These rulings are the errors assigned in this court.

In view of the dire consequences that may result from the least inattention or want of care or skill, druggists, apothecaries and all persons engaged in manufacturing, compounding or vending drugs and medicines should not only be required to be skillful, but should also be exceedingly cautious and prudent. All persons who deal with deadly poisons, noxious and dangerous substances are held to a strict accountability.

The highest degree of care known to practical men must be used to prevent injuries from the use of drugs and poisons. It is for these reasons that a druggist is held to a special degree of responsibility. The care required must be commensurate with the danger involved; the skill employed must correspond with that superior knowledge of the business which the law requires. *Walton* v. *Booth,* 34 La. Ann. 913; Cooley Torts, pp. 75, 76; *Thomas* v. *Winchester,* 6 N. Y. 397.

It is also an established rule that a vendor of provisions for domestic use is bound to know that they are sound and wholesome, at his peril. *Van Bracklin* v. *Fonda,* 12 Johns. 468. The vendor, by implication, undertakes that they are sound and wholesome. 2 Black. Comm. 165. Ordinarily, a slight inspection or examination of articles of food will determine their soundness. The appellee's complaint does not proceed upon the the-

ory of the breach of an implied warranty, but it is founded upon a tort, that of negligence. If the cause of action had been put upon the same ground as the sale of food, a different question might have been presented.

The appellants insist that they are protected from liability by the label of the reputable wholesale dealers. If the drug sold had been received and labelled in an unbroken package, and had by them been sold to the appellee in an unbroken package, there would be much force in this contention. But here the package was broken, the contents were handled and put into a jar, and were again dealt out in a small quantity to appellee. The appellants and their agents had opportunities of seeing, knowing and determining the character of the drug.

It is further insisted that the liability, if any, is against the wholesale dealers or those who improperly labelled the drug. *Thomas* v. *Winchester*, *supra*. It is, perhaps, true that an action would lie against the persons who made the first mistake, but it does not follow from this that the appellants are excused. If they were guilty of negligence in making the sale, they must respond.

The appellants further contend that the verdict fails to find the facts from which the legal inference of negligence can be drawn, that for aught that appears the injury was the result of inevitable accident, for which nobody is legally responsible. The case of *Brown* v. *Marshall*, 47 Mich. 576 ; 41 Amer. Rep. 728, is relied upon in support of this contention. In that case an instruction given by the trial court stated it to be the duty of druggists to know the properties of the medicines which they sell and to employ such persons as are capable of discriminating and dealing out according to prescription, and if the defendant's clerk sold and delivered to the

plaintiff a poisonous instead of a harmless drug, the defendant would be liable for the injury resulting.

It was held that this instruction correctly stated the druggist's duty, but that it was erroneous as applied to the facts, because it ignored the element of negligence. It was further stated in the opinion in that case that there is no liability in such cases, irrespective of the questions of negligence and intentional wrong. In that case the druggist's clerk sold sulphate of zinc for epsom salts. The court, by Cooley, J., said : ''That such an error might occur without fault on the part of the druggist or his clerks, is readily supposable. He may have bought his drugs from a reputable dealer, in whose warehouse they may have been tampered with for the purpose of mischief. It is easy to suggest accidents after they came into his own possession, or wrongs by others, of which he would be ignorant, and against which a high degree of care would not give perfect protection. But how the misfortune occurs is unimportant, if under all the circumstances the fact of occurrence is attributable to him as a legal fault. * * * * * * But we do not find that the authorities have gone so far as to dispense with actual negligence as a necessary element in the liability when a mistake has occurred.''

The case of *Fleet* v. *Hollenkemp*, 13 B. Mon.(Ky.) 219, bears little similarity to the case at bar. The druggist there sold the drugs ordered, but owing to his carelessness in preparing them they became poisoned. The same rule would apply under such circumstances as applies in the case of impure or poisoned food or provisions.

In the verdict before us there is no finding of any fact or facts showing that the appellants were guilty of negligence, unless the mere sale of the wrong drug establishes a *prima facie* case, a proposition which the authorities do not seem to support. Appellants might have

taken every precaution required of them by the law for anything that is found by the jury. The facts constituting the negligence must be established before the plaintiff can have judgment on the special verdict. This was not done in this case.

Judgment reversed, with instructions to grant appellee a new trial, if requested within ninety days.

NOTE.—The question of liability in cases of tort for the sale of an unwholesome drug is the subject of annotation to *Craft* v. *Parker* (Mich.), 21 L. R. A. 139.