## KNOEFEL v. ATKINS.

[No. 5,952. Filed June 7, 1907. Rehearing denied October 29, 1907.]

1. APPEAL.—*Insufficiency of Evidence.*—The Appellate Court, in determining whether the evidence was sufficient to support the judgment, will consider only the evidence favorable to the successful party, together with the inferences therefrom.  p. 432.

2. SAME.—*Weighing Evidence.* — *Sales.* — *Drugs.* — Evidence that plaintiff's agent ordered, from a druggist, phosphate of soda and placed the package received in a basket; that a few days later she took a dose thereof, whereupon she became violently sick, and upon investigation the package was found to contain acetanilid, sufficiently shows that the defendant made a mistake in the drug sold.  p. 432.

3. PLEADING.—*Complaint.—Negligence.—Sales of Drugs.*—A complaint alleging that the defendant, a druggist, negligently sold to the plaintiff acetanilid instead of phosphate of soda which was ordered, to plaintiff's damage, states a cause of action.  p. 434.

4. SAME.—*Complaint.—Negligence.—Details.—Evidence.—Variance.*—Where the complaint against a druggist for selling acetanilid instead of phosphate of soda alleges negligence generally and gives the details of the transaction, it is not necessary that the evidence show such details to be true, the details being uncontrolling in the complaint as well as the evidence.  p. 434.

5. NEGLIGENCE.—*Presumptions of.*—Where the thing causing an accident is under defendant's management and control, and the accident is of unusual occurrence when proper care is used, the happening of the accident raises a presumption of defendant's negligence.  p. 435.

6. SAME.—*Failure to Discharge Duty.—Presumptions.*—Failure of defendant to discharge his legal or contractual duty raises a presumption of his negligence.  p. 435.

7. NEGLIGENCE.—*Res Ipsa Loquitur.*—*Burden of Proof.*—Where defendant has complete control of that which causes an accident, and the accident does not usually happen where ordinary care is used, proof of the accident together with the circumstances makes a *prima facie* case of negligence against defendant, and the burden is then upon him to prove his exercise of due care. p. 435.

8. SAME.—*Druggists.*—*Sales.*—*Wrong Medicines.*—*Res Ipsa Loquitur.*—Negligence is presumed, where the evidence shows that a druggist sold acetanilid to a customer who ordered phosphate of soda and such customer was severely injured thereby, the doctrine of *res ipsa loquitur* applying. *Howes* v. *Rose*, 13 Ind. App. 674, overruled. p. 437.

9. APPEAL.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting oral evidence. p. 439.

10. TRIAL.—*Instructions.*—*Druggists.*—*Mistakes.*—*Negligence.*—The plaintiff, in an action against a druggist for negligence in selling to her a poisonous drug instead of the harmless drug ordered, has a right to an instruction that proof of the mistake on the druggist's part raises a presumption of negligence against him. p. 439.

11.—EVIDENCE.—*Impeaching.*—*Contradiction of Fact Testified to.*— Where a druggist's clerk denies a conversation with a witness relative to a mistake in selling acetanilid for phosphate of soda, the evidence of such witness is admissible, in impeachment, to show that such conversation occurred. p. 439.

TRIAL.—*Instructions.*—*Outlining Issues.*—An instruction, not mandatory in form, outlining the issues of the case to the jury, is not improper. p. 439.

13. SAME.—*Instructions.*—*Contributory Negligence.*—*When Omission of, Harmless.*—Where the evidence showed that the mother ordered phosphate of soda from defendant, a druggist, and was given acetanilid; that she did not know the difference between such drugs and gave to her daughter, the plaintiff, the acetanilid thinking it was phosphate of soda, an instruction saying that such druggist was liable for such sale, omitting any mention of plaintiff's contributory negligence, is harmless, there being no evidence of contributory negligence. p. 439.

14. SAME.—*Instructions.*—*Damages.*—*Confining Jury to Evidence Relative Thereto.*—An instruction that the jury in estimating the damages should consider all of the circumstances "shown by the evidence—the pain and suffering endured by the plaintiff, injury to her health, loss of strength, the anxiety and privation, if any, which the plaintiff has already suffered, or may hereafter suffer, * * * and upon all the evidence" award such sum as will fairly compensate her for her injuries, is reversible error. Roby, J., dissents, collecting authorities. p. 440.

From Clark Circuit Court; *Harry C. Montgomery*, Judge.

Action by Martha Atkins against Charles D. Knoefel. From a judgment for plaintiff, defendant appeals. *Reversed.*

*George H. Voight, Charles W. Schindler, Charles D. Kelso, Merrill Moores* and *Morton S. Hawkins,* for appellant.

*C. L. & H. E. Jewett, T. J. Brock* and *A. Dowling,* for appellee.

RABB, J.—The appellee sued appellant to recover damages alleged to have been sustained from injuries resulting to her from the effects of taking a poisonous drug alleged to have been negligently sold by the appellant as and for a harmless remedy. General denial was filed to the complaint; a trial by jury, resulting in a·general verdict in favor of appellee, assessing her damages at $2,000, and with the general verdict the jury returned answers to interrogatories. The only error complained of was the action of the court below in overruling appellant's motion for a new trial. The grounds of the motion urged in this court are: (1) Insufficiency of the evidence to sustain the verdict; (2) admitting in evidence certain testimony of witness Thomas Barnett; (3) giving, by the court, of instructions one, two, six, and seven, asked for by appellee; (4) the damages assessed are excessive.

·The complaint avers that the defendant was at the time of the transaction complained of the proprietor of a drug store in the city of New Albany, engaged in the sale of drugs at retail; that plaintiff's mother, Dorcas Scott, directed Henry Wolfe to purchase for her a quantity of phosphate of soda; that phosphate of soda is a medicinal compound, harmless and beneficial in its effect when taken as a medicine, and which could be safely administered without medical advice in quantities as large as two teaspoonfuls at a single dose; that said Wolfe, pursuant to the request and direction so given him, went to the drug store of the defendant and·ordered ten

cents worth of phosphate of soda; that thereupon the defendant's salesman, Edward Mayes, carelessly and negligently delivered to said Wolfe, for said Dorcas Scott, a package purporting to contain phosphate of soda, but which, in fact, contained an entirely different drug called acetanilid; that said drug so delivered by said clerk to said Wolfe is a chemical compound of a highly poisonous nature, and so injurious in its effects as to be unsafe to take as a medicine except in small doses and under medical direction; that when taken in doses of one teaspoonful or more it is injurious and poisonous in its effects upon the human system; that both phosphate of soda and acetanilid are white substances, similar in general appearance to one not familiar with drugs, but easily distinguished from each other by careful and competent druggists.

It is further averred that said Edward Mayes was negligent in the sale of said acetanilid to said Wolfe, in that he negligently and hastily picked up the receptacle in which said poisonous acetanilid was contained, and, without looking at the label or outside of said receptacle to ascertain what substance was in it, poured the entire contents of said receptacle into a paper upon the scales; that he negligently failed to look at said substance when weighing the same, to see whether it was or was not phosphate of soda, whereas, if he had examined said drug while he was weighing it he could have discovered that it was not phosphate of soda, but acetanilid; that he negligently wrapped up and delivered said acetanilid to said Wolfe without placing a mark or label thereon to indicate that the same was acetanilid; that the plaintiff, while at the home of her mother, and as a member of her family for the time being, desiring to take a purgative medicine, at the direction of her mother took two teaspoonfuls of said drug, believing it to be phosphate of soda, and that as a consequence she became very sick, was disabled for a long while, and suffered injury.

One of the errors complained of by the appellant is that the evidence is not sufficient to sustain the verdict, in that

it does not sufficiently show the negligence of the
1.  druggist in making the sale. In determining the ques-
tion of the sufficiency of the evidence, the court will
not undertake to weigh the evidence, but will consider only
that evidence which is most favorable to the appellee, not
only the facts proved, but all the inferences that may reason-
ably be drawn from the facts proved, and, if they are suffi-
cient to sustain the verdict, the court cannot set it aside on
account of the insufficiency of the evidence.

Two questions arise in considering the sufficiency of the
evidence to sustain the verdict: (1) Did the appellant make
a mistake, and sell and deliver to the witness Wolfe, the
agent of Dorcas Scott, acetanilid for phosphate of soda, and
did the appellee take the drug thus sold by appellant, and
sustain injury thereby? (2) Was the appellant guilty of
negligence in making the mistake?

In considering the first question the only serious point that
arises is the sufficiency of the proof to identify the drug
taken by appellee with the drug delivered by appel-
2.  lant's clerk to the witness Wolfe. The testimony of
Wolfe is abundantly sufficient to show that he called
on appellant's clerk for a dime's worth of phosphate of soda,
and that the clerk wrapped up and delivered to him a pack-
age in a brown paper, which Wolfe afterwards delivered
into the hands of Ida Scott, and that she put this package in
a basket on top of the cupboard in the diningroom of her
mother's home, on Saturday afternoon, Februrary 28; that
on Monday, March 2, appellee took from this same basket a
package wrapped in brown paper, and took therefrom one
and one-half teaspoonfuls of acetanilid. The evidence is
entirely silent upon the question as to what else, beside the
package from which appellee took the dose, the basket con-
tained, or whether it was the only package in the basket at
the time Miss Scott placed the same in it, and at the time ap-
pellee took the package out of it. It must be confessed that
appellee's case would have been much stronger had the evi-

dence affirmatively disclosed that there were no other similar packages in the basket at the time the package was taken out of it by appellee, and that there was not at that time, nor at any time after Miss Scott received the package, any similar package containing phosphate of soda in the basket. On the other hand, the appellant's defense would have been complete had it been shown that the basket contained, besides the package from which appellee took the dose, a package of phosphate of soda; and the appellee's case would have been greatly weakened had the evidence shown that there were at the time in the basket other packages similar in appearance to the one from which appellee took the dose. But none of the witnesses who knew about the facts were asked a question by either party on the subject of the contents of the basket from which appellee took the package.

If the appellee or any of her witnesses had been asked regarding the contents of the basket, and she or they had refused to answer, or had answered evasively, the jury might well have assumed that there were other packages in the basket besides the one from which appellee took the dose, and that one of these contained phosphate of soda. The entire examination of the witnesses seems to have proceeded upon the assumption on the part of both parties that the package from which appellee took the dose was the identical package delivered by Wolfe to Ida Scott. In this state of the evidence there is no presumption, either one way or the other, as to other packages being in the basket, and the court cannot say that the circumstances proved did not justify the finding of the jury that the package from which appellee took the poisonous dose was the same package sold and delivered by appellant's clerk to Wolfe. Was the appellant guilty of negligence in making the mistake? In the consideration of this question we can well consider also the complaint urged by appellant against the seventh instruction asked by the appellee and given by the court to the jury, to

the effect that, "when a druggist sells drugs or medicines to a customer, he impliedly warrants that they are of the character called for, and he is bound to know the properties of the medicine he vends."

It is not, generally speaking, necessary in actions for negligence that the complaint set forth the circumstances which tend to show negligence. It is sufficient to allege 3. generally the doing of the act that led to the injury, and that it was negligently done. The alleged wrongful act charged in the appellee's complaint in this case, as leading to the injury, was the delivery by appellant's clerk to Wolfe, the agent of Dorcas Scott, when he called for phosphate of soda, of the poisonous drug acetanilid, and to allege that this act was negligently done was sufficient.

In Davis v. Guarnieri (1887), 45 Ohio St. 470, 485, 15 N. E. 350, 4 Am. St. 548, it was contended that no act of negligence could be proved except as specifically alleged in 4. the petition. The court say in that case: "The wrongful act complained of—the act which led to the injury—was carelessly selling and delivering to the plaintiff a deadly poison instead of the harmless medicine called for. * * * The allegation in a pleading that the party complained against negligently committed the particular act which led to the injury where redress is sought, furnishes the predicate for the proof of all such incidental facts and circumstances both of omission and commission as fairly tend to establish the negligence of the primary fact complained of." The case of Fisher v. Golladay (1890), 38 Mo. App. 531, is to the same effect. Evidence, therefore, may be sufficient to establish negligence on the part of appellant in delivering acetanilid to his customer who called for phosphate of soda, even though it does not establish the particular facts and circumstances averred in the complaint.

It is a well-established rule in actions for negligence that where the thing causing the accident is under the manage-

ment and control of the defendant, and the accident is such as does not ordinarily happen, if those who have the management of such thing use proper care, a presumption of negligence arises from the happening of the accident. Lawson, Presumptive Ev. (2d ed.), 122.

It is also·a well-recognized rule that where a party is under a duty, either by law or by contract, the failure to discharge that duty raises a presumption of negli-gence against the party charged with the duty. Lawson, Presumptive Ev. (2d ed.), 126.

It has been well said that an accident speaks for itself when its cause is under the control of the party who brings it to pass. There must be reasonable evidence of negligence, but, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care. In such case the mere proof of the accident and the circumstances under which it happened are sufficient to throw upon the person causing the accident the burden of showing that he used due care. *Scott* v. *London, etc., Docks Co.* (1864), 3 Hurl. & Colt. *596; *Byrne* v. *Boadle* (1863), 2 Hurl. & Colt. 722. This rule is universally applied against common carriers of passengers, where the passenger is injured from accidents resulting from defects in either the means or the management of the transportation. *Pittsburgh, etc., R. Co.* v. *Higgs* (1906), 165 Ind. 694, 4 L. R. A. (N. S.) 1081; *Indianapolis St. R. Co.* v. *Schmidt* (1904), 163 Ind. 360; *Cleveland, etc., R. Co.* v. *Newell* (1885), 104 Ind. 264, 274, 54 Am. Rep. 312; *Brighton* v. *White* (1891), 128 Ind. 320; *Louisville, etc., R. Co.* v. *Taylor* (1890), 126 Ind. 126; *Terre Haute, etc., R. Co.* v. *Sheeks* (1900), 155 Ind. 74; *Louisville, etc., R. Co.* v. *Miller* (1895), 141 Ind. 533; *Pitts-*

*burgh, etc., R. Co.* v. *Campbell* (1904), 116 Ill. App. 356; *North Chicago St. R. Co.* v. *Cotton* (1892), 140 Ill. 486, 29 N. E. 899; *Pittsburgh, etc., R. Co.* v. *Thompson* (1870), 56 Ill. 138; *Peoria, etc., R. Co.* v. *Reynolds* (1878), 88 Ill. 418; *Eagle Packet Co.* v. *Defries* (1880), 94 Ill. 598, 34 Am. Rep. 245. This rule has been applied where a traveler on the streets of a city was struck by an electric sprinkling car running wild on the street-car tracks of the city. The supreme court of Illinois, in deciding the case of *Chicago City R. Co.* v. *Barker* (1904), 209 Ill. 321, 70 N. E. 624, say, that while negligence itself is never presumed, the presumption of negligence may be created by the circumstances under which the accident occurred; and where it is thus presumed from the occurrence, the defendant is called upon to rebut the *prima facie* case made, by showing that he took reasonable care to prevent the accident. The rule was applied where a shed, temporarily erected over a sidewalk in the course of building operations, fell on a traveler as he passed along the walk. *Lubelsky* v. *Silverman* (1905), 96 N. Y. Supp. 1056. The same rule was applied in the similar case of *Connolly* v. *Des Moines Investment Co.* (1906), 130 Iowa 633, 105 N. W. 400. In the case of *Cincinnati, etc., R. Co.* v. *South Fork Coal Co.* (1905), 139 Fed. 528, 71 C. C. A. 316, 1 L. R. A. (N. S.) 533, the court say: "In each action for a tortious injury the question as to what evidence will make a *prima facie* case of negligence and require an explanation from the defendant will depend upon the nature and circumstances of the injury and the measure of care due from the defendant."

From the consideration of all the cases on the subject this general rule may be adduced: Where an accident happens resulting in the injury to a person or his property, and it is made to appear that all the instrumentalities causing the accident are under the exclusive control and management of the defendant, and the accident is such as ordinarily would not occur if due care was exercised by those who

have control of such instrumentalities, and a duty to exercise such care is owing the plaintiff from the defendant, then proof of the circumstances of the accident and injury resulting therefrom casts on the defendant the presumption of negligence and the burden of explaining the accident consistent with due care on his part.

Does this rule apply to the case of a druggist, who, by mistake, deals out poison to a customer who calls for a harmless remedy? What duty does the druggist owe

8. to the customer? All the authorities agree, and the very necessities of the case require, that the highest degree of care known to practical men must be used to prevent injuries from the use of drugs and poisons. It is for these reasons that a druggist is held to a special degree of responsibility. The care required must be commensurate with the danger involved. The skill employed must correspond with that superior knowledge of the business which the law requires. 1 Cooley, Torts (Lewis's ed.), *82, *83; *Thomas* v. *Winchester* (1852), 6 N. Y. 397, 57 Am. Dec. 455; *Howes* v. *Rose* (1895), 13 Ind. App. 674, 55 Am. St. 251; 10 Am. and Eng. Ency. Law (2d ed.), 270, note 3, and cases cited. The same rule that applies to the common carrier of passengers, and for the same reason—that is, that the life and safety from bodily harm of a passenger is at hazard, and his security due to the care and skill of the carrier alone, and under circumstances where the passenger is powerless to protect himself—applies to the druggist. So, too, the life and health of a customer at the druggist's counter is at hazard, and he is equally dependent for security upon the care and skill of the druggist, and is equally powerless to protect himself. Are the agencies by which the customer may be injured by mistake exclusively under the management and control of the druggist? To ask this question is to answer it. The poisons and the harmless medicines in which he deals are on his shelves, in his receptacles. He puts them there, he takes them down, and deals

them out to the customer who is not presumed to be able to identify them, and who, as a rule, would not know quinine from strychnine, or acetanilid from phosphate of soda. And is a mistake in the dealing out of medicine such an accident as may ordinarily be expected when due care is used by the druggist? Most certainly not. Such being the case, no sound reason can be found for refusing to apply the rule above announced to the case of a druggist dealing out a poisonous drug by mistake to a customer who asks for a harmless remedy, and we hold that it does apply. And when it is shown that a customer calls upon a druggist for a harmless remedy, and the druggist or his clerk deals out to him a poison by mistake, these circumstances make a *prima facie* case of negligence against the druggist, and call upon him to show that his mistake was, under the circumstances, consistent with the exercise of due care on his part; and the burden is not imposed upon the purchaser of the drug to go behind the druggist's counter and into the details of his business, and explain how it came about that the druggist made the mistake, and that there was negligence in the way the goods were handled by him somewhere in the course of their transit through his hands into the hands of the purchaser. The case of *Howes* v. *Rose, supra,* so far as it is inconsistent with the decision here expressed on this point, is overruled.

This view is not inconsistent with the decision of the supreme court of Michigan in the case of *Brown* v. *Marshall* (1882), 47 Mich. 576. In that case a mandatory instruction was given that entirely left out of consideration any explanation the druggist might give of the accident, consistent with the exercise of due care on his part. We do not hold that the druggist may not show that the mistake made by him was excusable, and that the circumstances were such that he could not be charged with a lack of due care. What we do hold is that the burden rests upon the druggist to explain his own mistake.

The jury in this case found that the mistake was made as alleged in the complaint. The evidence justified that finding. No explanation whatever was offered by the appellant as to how the mistake came to be made. He simply denied the sale of the acetanilid, and in this condition of the evidence the case could not be reversed, on the ground that it was insufficient to sustain the verdict.

For the reasons already expressed, there was no error in the seventh instruction given by the court to the jury at the appellee's request. Indeed, the appellee was entitled to an instruction that the proof of the druggist's mistake raised a presumption of negligence against him.

There is no merit in the objection taken by appellant to the testimony of the witness Barnett. Appellant's witness Mayes had testified on his direct examination that he did not know appellee's witness Wolfe; did not know of selling him any kind of drug on February 28, or at any other time, and never sold acetanilid for phosphate of soda. The questions propounded to the witness Barnett, and the answers thereto, were for the purpose of contradicting Mayes relative to an alleged conversation had with Barnett as to this sale, and were competent for that purpose as impeaching evidence.

There is no merit in appellant's objection to instruction one, given by the court at appellee's request. It simply informed the jury of the nature of the issues they were to try. It was not mandatory in form, and could not have been misunderstood by the jury.

Instruction two, given by the court at appellee's request, was a mandatory instruction, and did not correctly state the law, and, unless harmless, would require the reversal of the cause. It was erroneous because it failed to take into consideration the element of contributory negligence on the part of the appellee, which might defeat her recovery, and, if a finding favorable to appellant on this

question could be upheld under the evidence, the case must be reversed, notwithstanding other conflicting instructions given by the court properly stated the law. The complaint avers that the appellant sold the drug to Wolfe for phosphate of soda, and that from the identical drug thus sold by appellant for phosphate of soda the appellee took the dose which injured her, and that it was acetanilid; that the appellee knew nothing about the appearance of either drug, and believed the medicine she was taking to be what it was sold for, phosphate of soda. If the jury found all the facts averred in the complaint, they necessarily found this fact to be true. If it were true, the appellee had a right to rely upon the implied representation of the druggist that the drug was phosphate of soda, and in taking it she would not subject herself to the imputation of negligence; and the court, if the jury had found in favor of the appellant upon this question alone, would be duty bound to set aside the verdict. Such being the case, the error was a harmless one, and would not justify the reversal of the cause.

The sixth instruction given by the court to the jury at the appellee's request, and complained of here, was as follows: "If you find for the plaintiff, it will be your duty to assess the damages which, in your judgment, she ought to recover. The damages cannot exceed the sum of $15,000 demanded in the complaint. In fixing the amount of damages you will consider all the circumstances of the case as shown by the evidence, the pain and suffering endured by the plaintiff, the injury to her health, loss of strength, the anxiety and privation, if any, which the plaintiff has already suffered, or may hereafter suffer, occasioned by the use of the drug, and, upon all the evidence, you are to award her such sum as, in your judgment, will fairly compensate her for the injuries she has sustained." This was the only instruction given to the jury on the question of damages, or that in any way related to the subject, or limited the inquiry of the jury in making the assessment of damages,

and is criticised as giving to the jury too wide a scope to draw upon in the assessment of damages, in that they might consider all the circumstances shown by the evidence, and in leaving the assessment to their judgment not controlled by the proof in the case. In the case of *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 527, 39 Am. Rep. 98, an instruction directing the jury "from all the facts" to determine what amount the plaintiff should recover, was held a reversible error. It had been shown in evidence in that case that the intestate's family was left in poverty, and that others had been injured at the same place where the intestate met his death. This case has never been overruled, and has frequently been cited with approval. In the case of *Broadstreet* v. *Hall* (1904), 32 Ind. App. 122, the trial court, after correctly instructing the jury what facts were proper for them to consider in determining the amount of damages they should award the appellee, in case they found for her, added, "and all the facts and circumstances proved in the case." Evidence went to the jury in that case that the boy who, in riding his father's horse, had collided with the appellee, causing the injury sued for, was in the habit of riding his father's horse recklessly through the streets. The instruction was held reversible error because it did not limit the consideration of the jury in assessing damages to the evidence relating to that subject, and numerous cases are cited in support of that view. A similar question was presented to the Supreme Court in the case of *Monongahela River, etc., Coke Co.* v. *Hardsaw* (1907), 169 Ind.—where an instruction by the trial court, after calling the jury's attention to all the facts proper for them to consider in the assessment of damages, added the phrase, "together with all the facts and circumstances in the case," was held reversible error.

There are no circumstances in this case that will take it out of the operation of the rule. Here no instruction withdrew from the consideration of the jury any evidence offered

in the case for any purpose. There was evidence before the jury tending to prove that the appellant's clerk, who is charged with having made the mistake in this case, had made similar mistakes previously, and under the broad sweep of this instruction the jury had the right to consider, in assessing damages, all the circumstances upon which the case was predicated, to wit, that the appellant was a retail druggist, dealing in deadly poisons, and that he, through his clerk, had carelessly dealt out to a customer, calling for a harmless remedy, a deadly poison; that the appellant, with the knowledge of the charge that his clerk had made the mistake, still retained him in his employ long after the circumstance happened, and up to the time the case was tried. The evidence of Mayes shows that, when he testified as a witness upon the trial of this cause, he was still in the employ of the appellant as a drug clerk. No instruction given to the jury withdrew this fact from their consideration in the assessment of damages. The instruction given by the court in the case of *Pittsburgh, etc., R. Co.* v. *Carlson* (1900), 24 Ind. App. 559, and *Citizens St. R. Co.* v. *Hoffbauer* (1900), 23 Ind. App. 614, are clearly distinguishable from the case at bar. Under the authority of the cases we have heretofore cited, the instruction complained of was clearly erroneous, and for this reason the cause must be reversed.

Cause reversed, with instruction to the court below to grant a new trial.

Watson, P. J., not participating.


## DISSENTING OPINION.

ROBY, J.—I do not agree to the reversal of this judgment. The instruction which is held to be erroneous is in terms as follows: ''If you find for the plaintiff, it will be your duty to assess the damages which, in your judgment, she ought to recover. The damages cannot exceed the sum of $15,000 demanded in the complaint. In fixing the amount of dam-

ages you will consider *all the circumstances of this case as shown by the evidence,* the pain and suffering endured by the plaintiff, the injury to her health, loss of strength, the anxiety and privation, if any, which the plaintiff has already suffered, or may hereafter suffer, occasioned by the use of the drug, and, *upon all the evidence,* you are to award her such sum as, in your judgment, will fairly compensate her for the injuries she has sustained.'' There is no substantial difference between that portion of this instruction which is italicized in the quotation just given, and that portion of the instruction which is also set out and italicized in the opinion of the Supreme Court in the case of *Monongahela River, etc., Coke Co.* v. *Hardsaw* (1907), 169 Ind. —, which was reversed because of the giving of such instruction, and the decision in that case, as announced, leads to the reversal of this one. The language used in the opinion in that case is in part as follows: ''That the portion of the instruction embraced in italics is erroneous is beyond controversy. *City of Delphi* v. *Lowery* [1881], 74 Ind. 520, 39 Am. Rep. 98, and authorities cited; *Broadstreet* v. *Hall* [1904], 32 Ind. App. 122. By the charge in question the court gave the jury complete liberty in the estimation of damages to consider all the facts and circumstances in evidence in the case, without any regard to their relevancy to, or bearing upon, the issue of damages. Had the court added the words 'relevant thereto' or 'which have any bearing thereon' a different question would be presented.''

If the statement that the question is ''beyond controversy'' is to be taken as meaning that the Supreme Court will not consider it, that the conclusion announced ''is so whether it is so or not,'' then it might as well be accepted without comment; but I choose to believe, for the present, that the positiveness of the assertion is due to lack of information upon the subject, and that, being inadvertently made, it will not operate to prevent the application of correct legal principles to the facts presented. *City of Delphi* v. *Lowery,*

*supra*, and *Broadstreet* v. *Hall, supra*, are the only Indiana cases cited to this point in *Monongahela River, etc., Coke Co.* v. *Hardsaw, supra*. The latter of these cases (*Broadstreet* v. *Hall, supra*) is based upon the former, and therefore it, as well as the case of *Monongahela River, etc., Coke Co.* v. *Hardsaw, supra*, rests, so far as authority is concerned, solely upon *City of Delphi* v. *Lowery, supra*. In that case the trial court admitted incompetent evidence directly addressed to the question of damages. It permitted proof to be made, over objection, that the intestate left his family in a destitute condition. The court declared this evidence incompetent, but held that the ground of its incompetency not having been stated in the trial court no question was presented upon appeal. The evidence was not addressed to any issue in the case except to the amount of recovery, and was calculated to prejudice defendant. An instruction was given in terms as follows: "If you find for the plaintiff, in assessing her damages, you may take into consideration the age of the deceased, his habits and occupation, and from all the facts determine what amount the plaintiff should recover, not exceeding $5,000." The court said: "This instruction, as applied to the facts which the court permitted the appellee to prove, was erroneous. Where, as here, facts are allowed to go in evidence, which furnish an incorrect basis for the assessment of damages, an instruction which directs the jury to determine from 'all the facts' the amount of the recovery is erroneous." It further said: "The evidence of this fact was unquestionably emphasized by its going to the jury over the objection of the appellant. In directing the jury to consider 'all the facts,' they were required to consider the fact that the appellee's intestate left his family in poverty and want, and this was an element which ought not to have entered into the consideration of the jury." The foregoing quotations state the ground of reversal and bring the case within the doctrine that "if evidence not admissible under the pleadings is admitted over objections made at the proper

time, it will be erroneous to give instructions based on such evidence.'' 1 Blashfield, Instructions to Juries, §84, and authorities cited. And see 11 Ency. Pl. and Pr., 165, and authorities cited in note 2. There is language used in *City of Delphi* v. *Lowery, supra,* on page 528, which was copied in *Broadstreet* v. *Hall, supra,* on page 129, and upon which the latter case was based, which, together with the authorities cited—the same ones in both cases—is the sole support of *Monongahela River, etc., Coke Co.* v. *Hardsaw, supra.* That language is as follows: ''Where there are facts given in evidence which ought not to be considered in estimating damages, the instructions of the court should inform the jury what facts should be considered by them in making their estimate, and not leave it to them to take into account facts which have no legitimate bearing upon that branch of the case. *Chicago, etc., R. Co.* v. *Becker* [1875], 76 Ill. 25; *Steel* v. *Kurtz* [1876], 28 Ohio St. 191; *Blake* v. *Midland R. Co.* [1852], 10 Eng. L. & Eq. 437; *Telfer* v. *Northern R. Co.* [1862], 30 N. J. L. 188.''

A review of these cases is interesting. *Chicago, etc., R. Co.* v. *Becker, supra,* was a case in which a parent sought to recover damages on account of the death of his infant son, an instruction, by which the jury were directed to ''assess such damages as they believe to be right,'' was held to be erroneous in permitting a recovery on account of the mental anguish of the parent. In *Steel* v. *Kurtz, supra,* the action was for damages on account of the death of a married woman, who left a husband, brothers, and sisters. The court treated the brothers and sisters as the ''next of kin'' for whose benefit the action was brought, and instructed that, no damages to them having been shown, the verdict should be for nominal damages only. The husband was ignored, and the court on appeal declared him to be the next of kin and reversed the judgment. *Blake* v. *Midland R. Co., supra,* decided by Lord Coleridge, ''turns entirely upon the construction of the recent statute. 9 and 10 Vict.,

c. 93." *Telfer* v. *Northern R. Co., supra,* holds that in a case under the statute to recover damages for death caused by negligence only pecuniary loss can be allowed. The question is decided upon the evidence. *Blake* v. *Midland R. Co., supra,* is cited. No question relating to the giving of instructions was in either case, and neither of the four cases, first cited in *City of Delphi* v. *Lowery, supra,* and a second time cited in *Broadstreet* v. *Hall, supra,* has even a remote connection with the proposition which it is supposed to support.

It thus appears that the doctrine said to be "beyond controversy" originated in a dictum, and is not supported by a single case ever cited to it by either the Supreme or Appellate Court. This condition leads to a search for some established legal principle upon which it can rest, and to this search nothing which has been written upon the subject offers any assistance. "The fact that a charge may be too general cannot be assigned for error unless the complaining party makes request for more specific instructions." Hughes, Instructions to Juries, §7. See, also, 11 Ency. Pl. and Pr., 217, and note 5, citing seventy Indiana cases. "Evidence competent only for some specific purpose should be limited to that particular purpose by proper instructions, and a refusal so to instruct is error." Hughes, Instructions to Juries, §109. "An instruction for one party containing terms or expressions which perhaps ought to be explained, cannot be complained of as error if the party complaining fails to request instructions explaining such terms or expressions." Hughes, Instructions to Juries, §6. And see *Treschman* v. *Treschman* (1902), 28 Ind. App. 206; *Baltimore, etc., R. Co.* v. *Conoyer* (1898), 149 Ind. 524; *Summit Coal Co.* v. *Shaw* (1896), 16 Ind. App. 9; *Hughes* v. *Parker* (1897), 148 Ind. 692. In the somewhat noted criminal case of *Hinshaw* v. *State* (1897), 147 Ind. 334, 381, the rule was stated, in connection with facts analogous in principle to those here involved, as follows: "But they say the instruc-

tion is bad for another reason, namely: because the court did not tell the jury what were 'subsidiary facts,' 'evidentiary facts' and 'essential elements of the crime charged.' That objection is a concession that the instruction was correct as far as it went, but that it did not go far enough to define what was meant by those terms. It is thoroughly settled that an instruction objected to because it does not go far enough, is not an available error unless the complaining party tenders an instruction to the court covering the omitted ground and the court refuses to give it, to which refusal there is an exception." *Powers* v. *State* (1882), 87 Ind. 144; *Behymer* v. *State* (1884), 95 Ind. 140; 11 Ency. Pl. and Pr., 224. The rule is necessary to the orderly administration of justice and the fair trial of causes.

Lawsuits frequently involve more than one issue of fact. In the case at bar, one matter to be determined was whether the defendant was liable, involving various matters of fact, and another was the amount of recovery, if any. Evidence relevant to any one part of the case was admissible, and it was the duty of the jurors to find all facts from the evidence. They were told to determine the amount of plaintiff's recovery, if any, from a consideration of all the evidence. There may have been cases in which judgments have heretofore been reversed because of a direction to the jury to find from the evidence and from all the evidence, but I have not been able to discover them. Instructions have been frequently questioned upon the ground that the jury were not restricted by them to assessment of damages from the evidence. The case of *Chicago, etc., R. Co.* v. *Thrasher* (1905), 35 Ind. App. 58, was reversed upon this ground, and is to some extent in harmony with *Chicago, etc., R. Co.* v. *Becker, supra,* but was subsequently overruled. *Indianapolis, etc., Traction Co.* v. *Henderson* (1906), 39 Ind. App. 324. Such instructions are approved upon the ground that "it will not be presumed that a jury will find anything except from the evidence, or that they will even consider any

matters not shown by the evidence." *Ohio, etc., R. Co.* v. *Slein* (1894), 140 Ind. 61, 70. So that the jurors in the case at bar were told to do the exact thing which they otherwise would be presumed to do.

The complaint is required to contain "a statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended." §341 Burns 1901, §338 R. S. 1881. An instruction in plain and concise language, enabling a person of common understanding to know what is intended, meets the reason of the law. "Jurors are presumed to be men of conscience and intelligence, honestly striving to do impartial justice." *McDonel* v. *State* (1883), 90 Ind. 320, 327. See, also, *Kennedy* v. *State* (1886), 107 Ind. 144, 150, 57 Am. Rep. 99; *Boyle* v. *State* (1886), 105 Ind. 469, 481, 55 Am. Rep. 218. The presumption is an applicable one. To hold that in an instruction, the subject-matter of which is the measure of damages to be assessed, a direction to consider all the evidence requires the consideration of evidence not connected with such subject-matter, is to reverse the presumption.

In *Louisville, etc., R. Co.* v. *Falvey* (1886), 104 Ind. 409, 429, an instruction, after enumerating certain elements of damage, concluded as follows: "And the amount assessed should be such a sum as, in your judgment, will fully compensate her for the injuries, or any of them, thus sustained." Of this the court said: "One of the objections urged to this instruction is, that it does not require the jury to assess the damages from the evidence in the case. There is no force in this objection. No juror of average intelligence could fail to understand that the court directed him to be guided by the evidence." What evidence? The evidence relevant to the subject of damages, of course. In the case of *City of Indianapolis* v. *Scott* (1880), 72 Ind. 196, 203, where the same objection was made to a similar instruction, the Supreme

Court said: "But no jury of reasonable intelligence could have been misled by the charge into the supposition that such matters could be considered unless shown by the evidence. As to the latter part of the charge, the jury could not suppose they were authorized to find anything except from the evidence. If the nature and character of the plaintiff's injuries were shown, the amount of her damages must have been determined by the judgment of the jury." And see *Pittsburgh, etc., R. Co.* v. *Carlson* (1900), 24 Ind. App. 559; *Citizens St. R. Co.* v. *Hoffbauer* (1900), 23 Ind. App. 614. The greater includes the less, and the three cases last cited carry with them a holding that the jury were presumed to know enough to consider upon the subject of damages only that part of the evidence which had a bearing upon it. To say that the jury will find the proper amount of damages from the evidence relevant to the subject, without any direction to find from the evidence, and that, when the same enumeration of elements is made, accompanied with the statement that such facts must be found from a consideration of all the evidence in the case, it will base its finding upon that part of the evidence not relevant to the subject, involves a contradiction and creates unreasonable confusion. In the one case the presumption is indulged that the jurors will find the fact from a consideration of the evidence in the case, and the instruction is thereby justified, and an explicit direction, on the other hand, to do that which they are presumed to do is declared to be reversible error. No matter how the instruction is framed, the whole matter is left to the jurors. If they, possessing ordinary intelligence, are told to find from the consideration of all the evidence, they will understand the phrase as meaning all the evidence relevant to the subject-matter of the charge, while, if the instruction is to consider all the relevant evidence in the case, they must determine for themselves what is and what is not relevant, exactly as in the other instance. The phrase "all the circumstances of this

case," is immediately followed by an enumeration of the elements from which damages are to be assessed, and specific statements control general ones.   *City of Wabash* v. *Carver* (1891), 129 Ind. 552, 13 L. R. A. 851; *Louisville, etc., R. Co.* v. *Kemper* (1897), 147 Ind. 561; *Citizens St. R. Co.* v. *Sutton* (1897), 148 Ind. 169.   Instructions must be considered and construed as a whole. *Whinery* v. *Brown* (1905), 36 Ind. App. 276; *Town of Sellersburg* v. *Ford* (1906), 39 Ind. App. 94.   Taken as a whole, it affirmatively appears that the intention of the court was that the various issues of fact involved in the case should be found from the evidence relevant to each of them, and there is no more reason in holding that, when the court told the jury to fix the amount of damages from a consideration of all the evidence, it meant or was understood as meaning that such damages should be determined from evidence properly admitted upon the question of whether defendant sold the drug in question, than there is in holding that a direction to find the fact as to such sale from all the evidence in the case required its determination from the evidence which related solely to the physical effect of such drug upon the plaintiff.   What the judge meant by the charge is perfectly plain, and the presumption is that the jury were capable of and did understand him.   1 Blashfield, Instructions to Juries, §376; *Union Mut. Life Ins. Co.* v. *Buchanan* (1885), 100 Ind. 63, 69; *Indianapolis St. R. Co.* v. *Robinson* (1901), 157 Ind. 414; *Browning* v. *Hight* (1881), 78 Ind. 257.   ''Certain portions of the charge are separated from the context and objected to as conveying a wrong view of the character and measure of the evidence requisite to establish the fraud.   The argument is that the instructions called for a degree of proof which was unreasonably rigid. No doubt this criticism would be warranted if the parts of the charge referred to were not qualified by other expressions. But they are so qualified, and the whole must be taken together, and the jury must be deemed to have had sufficient intelligence to understand the significance and application of

the several propositions. * * * We must assume that all the instructions were respected by the jury, these as well as others, and if such were the case the defendants have no valid ground of complaint, and the judgment should be affirmed with costs.'' *Hart* v. *Newton* (1882), 48 Mich. 401. And see *Backus* v. *Gallentine* (1881), 76 Ind. 367. The law presents different aspects according to the viewpoint of the observer and the manner of its application. It is a maze in which the unwary are entrapped through subtlety, quibble, and quip, and where the victim is overcome by sophistry and delusion, or it is a sane expression of truth and justice based upon the facts as they appear to the ordinary right-minded man. *Monongahela River, etc., Coke Co.* v. *Hardsaw* (1907), 169 Ind. —, and this case can both be easily classified by those who care to do so. The judgment appealed from is right upon the evidence, and should be affirmed for that reason, irrespective of the propositions heretofore discussed.

I hereby dissent.