## G. C. Adams v. Jacob Stadler.

1. PRACTICE—*When a General Issue is Filed to a Defective Declaration.*—Where a general issue is filed to a defective declaration the only question which can be raised on such declaration on appeal is that of its sufficiency to support the verdict.

. 2. DRAINS AND DITCHES—*Ditches—Change of Course, by Acquiescence.* —Where a person constructs a ditch on the lands of another by agreement, but changes the line of the ditch from that agreed upon, if the owner of the land is present while the work is going on, it is such acquiescence on his part as will bring him within the provisions of the act of 1889, concerning ditches constructed by mutual agreement. (Laws, 1889, 116.)    .

3. DAMAGES—*Destruction of Growing Crops.*—In case of total destruction, the measure of damage is the value of the crop at the time it was destroyed; but there is some confusion in the authorities as to the mode of arriving at that value. By some it is held proper to determine it by adding to the rental value of the land the cost of planting and cultivating up to the time of the destruction. By others it is held that it is proper to determine it by estimating what the growing crop would probably have made at maturity, and deduct therefrom the estimated cost of further cultivation.

**Action to Recover Damages**, for damming a ditch. Trial in the Circuit Court of Vermilion County, on appeal from a justice of the peace; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Affirmed. Opinion filed October 5, 1898.

LAWRENCE & LAWRENCE, attorneys for appellant.

KIMBROUGH & MEEKS, attorneys for appellee.

MR. JUSTICE HARKER delivered the opinion of the court.

This is an appeal from a judgment for $211, rendered in a suit brought by appellee against appellant, to recover damages caused by appellant damming up a ditch, whereby water was backed up and spread over appellee's fields.

The declaration contained two counts. The first alleged that the defendant was the owner of a servient estate, which was the outlet for the water which fell upon and flowed

over the dominant estate of the plaintiff through an open ditch, and that he wrongfully dammed the ditch and caused the water to back upon and spread over the lands of the plaintiff, thereby injuring and destroying his crops. The second count was framed under the act of 1889, relating to drains constructed by mutual license and consent, and alleged that the defendant had dammed up a certain open ditch, which had been constructed by agreement of adjacent land owners, whereby water was backed upon and spread over the plaintiff's fields, to the damage and destruction of his growing crops.

The sufficiency of the first count is questioned, but as the general issue was filed to it, we have only to determine whether it is sufficient to support a verdict. We are clearly of the opinion that it is.

The evidence shows that the natural outlet for the surface water on these and several hundred acres of other lands is Jordan's Branch, a stream flowing through appellant's land. About thirty years ago a ditch was cut along the natural water-course through the land of appellee, a forty-acre tract belonging to one Dougherty, and the land of appellant, to Jordan's Branch. In 1883 a Capstan ditcher was used to cut and clean out the old ditch, which formed the only outlet for surface water until the obstruction complained of.

Although there was some conflict in the testimony as to whether Ellis Adams, the grantor and father of appellant, consented to the cutting out of the ditch, it appears that he was present while the work was going on, and we are constrained to hold that there was such acquiescence on his part as to bring him within the provisions of the act of 1889, 2 Starr and Curtis' Annotated Statutes, 1839. There was some evidence tending to show that the Capstan ditcher did not follow the exact trail of the old ditch. There was not such deviation, however, as to make the matter material.

After a careful examination of the record, we entertain no doubt of appellee's right to recover. A more serious question arises upon the contention of appellant that the

damages are excessive. It is insisted that the court erred in admitting evidence as to damage done the crop growing upon the land flooded. On some of the land was an unmatured oats crop, and on some an unmatured corn crop. In case of total destruction, the correct measure of damage is the value of the crop at the time it was destroyed, but there is some confusion in the authorities as to the mode of arriving at that value. By some it is held proper to determine it by adding to the rental value of the land the cost of planting and cultivating up to the time of the destruction. By others it is held that it is proper to determine it by estimating what the growing crop would probably have made at maturity, and deduct therefrom the estimated cost of further cultivation, harvesting and marketing. Such rule was announced by our Supreme Court in C., R. I. & P. R. R. Co. v. Ward, 16 Ill. 530. It is contended, however, that the rule was denied and the case overruled in the case of Chicago v. Huenerbein, 85 Ill. 596. We do not regard the last mentioned case as overruling the former. It was not a case in which the value of a growing crop was involved, because the flooding occurred before the crop was planted. In C., B. & Q. R. R. Co. v. Schaffer, 26 Ill. App. 283, and in Economy Light and Power Co. v. Cutting, 49 Ill. App. 422, it was held, in harmony with the Ward case, that it was proper to inquire as to the probable yield of the crop if properly cared for, and in that way approximate the value. In this case the court allowed proof of the yield of the crop in that portion of the field not flooded. Under the circumstances, and in view of the fact that the value of that portion destroyed was estimated in dollars and cents, no error was committed on that account.

We regard the damages allowed as rather liberal and perhaps some higher than should have been fixed by a conservative jury; but they are not so excessive as would justify us in reversing the judgment. Judgment affirmed.