# THE CHICAGO CITY RAILWAY COMPANY

*v.*

## CHARLES BARKER, Admr.

*Opinion filed April 20, 1904.*

1. NEGLIGENCE—*questions of negligence and of credibility of witness are for the jury.*  Whether the failure to look before crossing a railroad is negligence, and whether plaintiff's testimony is true that he looked back before driving upon the track but saw no car approaching, are questions to be determined by the jury.

2. SAME—*negligence not presumed, but circumstances may shift burden.*  While negligence is not, as a general rule, to be presumed, yet the circumstances of the injury may themselves afford *prima facie* evidence of negligence, and in such case the defendant has the burden of rebutting the *prima facie* case by showing reasonable care.

3. SAME—*when doctrine of res ipsa loquitur applies.*  The doctrine of *res ipsa loquitur* applies to a case where the plaintiff was injured by a collision between his wagon and an electric sprinkling car belonging to and under management of the defendant company, which car was at the time running wild, with no one in charge.

4. SAME—*whether rebuttal evidence overcomes prima facie case is for the jury.*  Whether defendant's evidence in explanation of the manner in which its electric car escaped from the man in charge is sufficient to overcome the *prima facie* case of negligence arising from its running wild and colliding with plaintiff's wagon is a question for the jury.

5. PLEADING—*when allegation of negligence is sufficiently general to meet the proof.*  An allegation that the defendant street railroad company "carelessly, negligently and wrongfully ran and managed its car," is sufficiently broad to meet proof that the employee in charge of the car fell off, allowing the car to run wild.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

This is an action on the case, brought on August 23, 1900, in the superior court of Cook county to recover damages for personal injuries, claimed to have been suffered by John Eick in consequence of a collision between one of appellant's electric sprinkling cars, and a wagon,

in which Eick was driving. The declaration, as originally filed, consisted of two counts, to which the general issue was pleaded. Subsequently, the plaintiff discontinued his action as to the first count, and the cause went to trial before the jury upon the issue, tendered by the second count. The jury returned a verdict of guilty, and assessed the plaintiff's damages at $5000.00, and judgment was entered on the verdict. From this judgment the appellant prosecuted its appeal to the Appellate Court; and there, upon the requirement of a *remittitur* of $1500.00, which was entered, the Appellate Court entered judgment for the plaintiff in the sum of $3500.00. The present appeal is prosecuted from the judgment, so entered by the Appellate Court.

The suit was originally begun in the name of John Eick, but, during the pendency of the appeal from the Appellate Court to this court, Eick died intestate, and the present appellee, having obtained letters of administration upon his estate, has been substituted as appellee.

The second count of the declaration alleges that, on or about May 14, 1900, in Chicago, the defendant below, appellant here, was owning, controlling and operating a street railway, extending upon and along a certain public highway, to-wit: West Forty-seventh street, and on said street railway was owning, controlling and operating a certain electric sprinkling car; and then and there said car was proceeding in a westerly direction towards and near the crossing of said West Forty-seventh street with a certain other public highway, to-wit, South Oakley avenue; and plaintiff was then and there riding, as he had a right to do, on a certain wagon on West Forty-seventh street, and proceeding in a westerly direction some distance in front of said car, and was in the exercise of due care and diligence, and then and there the defendant so carelessly, negligently and wrongfully ran and managed the said street railway and car that, by and through the carelessness, negligence and misman-

agement of the defendant, said car then and there ran from behind against and into the plaintiff's wagon, on which he was then and there riding as aforesaid, and with great force and violence then and there threw and knocked the plaintiff from and off the said wagon to and upon the ground there, by means whereof, etc.

The facts are substantially as follows: Forty-seventh street runs east and west, and appellant has a double track street railway thereon. The east-bound cars are run over the south track, and the west-bound cars over the north track. About a block east of Oakley avenue appellant's tracks on Forty-seventh street are crossed from south-east to north-west by what are known as the Panhandle railroad tracks, the distance across which at this point is about one hundred feet. On May 14, 1900, Eick was riding west upon Forty-seventh street in a covered wagon, drawn by one horse, upon the north or west-bound track of appellant's railway. There appears to have been upon this track at that time repair work going on at the railroad crossing, and there were piles of material upon the crossing, which made it necessary to use the south or east-bound side of the street to cross the railroad tracks going either way. Upon reaching the Panhandle crossing, Eick stopped, waited for a freight train to pass, then drove over the tracks of the steam railroad south of appellant's tracks because of the obstruction aforesaid, and when he had passed the crossing, turned back into the north track. After Eick had proceeded forty or fifty feet in the north or west-bound track, his wagon was suddenly struck in the rear by the sprinkling car. This sprinkling car was a tank about three feet high, and set on ordinary street car wheels, and was not as high as a man's head. The car was an electric motor sprinkler, carrying a water tank, and had been in charge of a single motorman. Before Eick went upon the north track, the sprinkler was east of the railroad tracks and about one hundred and fifty yards in his

rear. The sprinkler, coming from the east towards the west, was running wildly, with no one in charge of it, and struck Eick's wagon from behind, so that the horse and wagon were forced to one side, and Eick was thrown out of the wagon. The car was stopped a short distance farther on at Oakley avenue by a man, who jumped upon the same, and disengaged the trolley.

. At a point about one hundred and fifty yards east of the Panhandle crossing the motorman, who had been in charge of the sprinkling car, fell, or was knocked off, from the same, and, as soon as he fell, jumped up and attempted to catch the trolley rope, so as to stop the car, but he failed in his attempt, and the car passed on until it struck Eick's wagon.

MASON B. STARRING, for appellant.

RICHOLSON & LEVY, (C. STUART BEATTIE, of counsel,) for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

At the close of all the evidence, the appellant requested the court to give an instruction, directing the jury to find the defendant not guilty; and it is the contention of the appellant that the trial court erred in refusing this instruction. It is claimed by the appellant, "that there was no evidence to sustain the verdict of the jury as to the issue, either of the appellant's negligence, or of ordinary care on the part of appellee." The question, which concerns this court, is not whether there was any evidence to sustain the issues involved, but whether there was any evidence, tending to establish the cause of action in the case.

*First*—It is said that Eick did not exercise ordinary care for his own safety. There is evidence tending to show that he did exercise such care. When he turned,

after passing the steam railroad crossing, from appellant's south track into the north track, he swears that he looked back to the rear, or east, and did not see the sprinkling car. It is true that the wagon, in which he was riding, was a covered wagon, but he stated that he stretched himself out to one side, and looked back. It is not evidence of negligence *per se* that a person does not stop and look back before crossing the track of a railroad, and it is a question for the jury to say, whether the failure to so stop and look is, or is not, negligence. (*Chicago City Railway Co.* v. *Fennimore*, 199 Ill. 9.) In the case at bar, the testimony of Eick shows that he did look, and that, as a result of his look, he saw nothing approaching in his rear. The argument of the appellant is that his evidence upon this subject was not true, because, under the circumstances, if he had looked, he must have seen the sprinkler approaching. This argument involves a discussion of the facts, which is inappropriate before this court, except so far as it is necessary to determine whether or not the evidence tends to sustain the cause of action. (*Chicago City Railway Co.* v. *Martensen*, 198 Ill. 511.) It was a question for the jury to decide from all the circumstances in the case, whether or not the testimony of Eick was true. The testimony is clear and positive on his part, that he did look, but whether he looked in such a way, as to show that he thereby exercised ordinary care for his own safety or not, was a matter entirely within the province of the jury to determine. The only ground, upon which appellant seeks to show that Eick was not exercising ordinary care, is the alleged untruthfulness of his testimony that he looked to see what was behind him. This being so, we are not prepared to say that there was no evidence, tending to show that he exercised ordinary care.

*Second*—This is a case for the application of the doctrine *res ipsa loquitur*. While Eick was riding west in his wagon upon the north side of the street, as he had a

right to do, an electric motor car belonging to and under the management of appellant, and used for sprinkling purposes, with no motorman, or any other person, upon it, or in control of it, ran up from the rear and struck Eick's wagon, and threw him out upon the ground, and inflicted the injuries, for which this suit is brought. This collision gives rise to a presumption of negligence on the part of the appellant, and the burden of proof was upon the appellant to rebut that presumption.

The meaning of the maxim, *res ipsa loquitur*, is that, while negligence is not, as a general rule, to be presumed, yet the injury itself may afford sufficient *prima facie* evidence of negligence, and the presumption of negligence may be created by the circumstances, under which the injury occurred. "Where negligence is thus presumed from the occurrence of the injury, defendant is called upon to rebut the *prima facie* case by showing that he took reasonable care to prevent the happening of such injury." (*Hart* v. *Washington Park Club*, 157 Ill. 9.) In *Hart* v. *Washington Park Club, supra,* quoting from *Scott* v. *Docks Co.* 3 Hurl. & C. 596, it was said: "There must be reasonable evidence of negligence. But when the thing is shown to be under the management of the defendant, or his servants, and the accident is such, as in the ordinary course of things does not happen if those, who have the management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care." (*North Chicago Street Railway Co.* v. *Cotton*, 140 Ill. 486.) In the same case, quoting from Addison on Torts (vol. 1, sec. 33), the rule was thus stated: "Where the accident is one which would not, in all probability, happen, if the person causing it was using due care, and the actual machine, causing the accident, is solely under the management of the defendant * * * the mere occurrence of the accident is sufficient *prima facie* proof of negligence to impose upon the defendant the *onus* of rebutting it."

There is no doubt here from the evidence that this electric sprinkling car, which caused the accident, was under the management and control of the appellant. When it was about one hundred and fifty yards in the rear and east of the point, where Eick's wagon turned to go upon the north track, the motorman in charge of the sprinkling car fell from it to the ground. He was the only person, who at the time was upon the car, which had one platform in the rear and one platform in front. At the time when the motorman, whose name was Foley, fell from the sprinkling car, he had one hand on the brake handle of the car, and the other hand on the barrel tank, but without apparently holding onto anything. While in this position he turned to look back, and says that, when he did so, he received a shock, which threw him from the car. His testimony is, in part: "I don't know whether I was looking back to see whether there were kids, or what was the matter. I put one hand on the brake handle, and I think I was looking back to see whether there was any water going out of the tank, * * * · and the other, back on the barrel, and I looked back over the tank, and at that instant, when I put back my hand, I got a shock and fell off involuntarily." It is evident that the motorman received no serious or long continued injury from the shock, because his own testimony shows that, as soon as he struck the ground, he jumped up, and ran after the sprinkler, and attempted to loosen the trolley wire. He says: "I jumped up the moment I fell. I got up as quick as I could, and made one jump to see if I could catch the trolley rope. I failed to get that."

It was for the jury to say, whether the motorman fell from the car on account of an electric shock, which, he says, he received, or whether he fell off, as the result of his own conduct in looking back over the barrel without securing a sufficient hold upon some part of the car to prevent himself from falling off. Whether his state-

ment was true, that an electric shock was the cause
of his fall, was a matter to be determined by the jury.
The testimony, introduced by the appellant, was to the
effect that there was no way, in which the electric ap-
paratus could cause such a shock; that no person had
ever heard of such an accident before; that the witness
had run the car for three weeks, and during all the
morning of that day without any accident, the accident
having occurred about one o'clock; that the car was of
the best and highest standard of construction; that it
was inspected by expert workmen every night, and that
any repairs, which were needed, were promptly made.

The contention of the appellant is that, if it was nec-
essary for it to rebut the *prima facie* presumption of neg-
ligence raised by the occurrence of the accident in the
manner stated, it did so by showing that the motorman
was thrown from the car by an electric shock, which the
appellant was unable to anticipate or prevent, and that,
therefore, it should not be held responsible, because the
car was not in the control of any one when it struck
Eick's wagon. It was a question for the jury to deter-
mine, whether the explanation of the accident sufficiently
rebutted the presumption in question. The credibility of
such rebutting evidence is held by the authorities to be a
question for the jury. (*Uggula* v. *West End Street Railway
Co.* 160 Mass. 351; *O'Flaherty* v. *Nassau Electric Railway Co.*
54 N. Y. Supp. 96). In actions brought for damages, al-
leged to result from fire, caused by the escape of sparks
from locomotive engines, the fact of the communication
of the fire to the property destroyed or injured is taken
as *prima facie* evidence to charge with negligence the cor-
poration or other person, who, at the time of the injury,
is in the use and occupation of the railroad, and in such
cases, "the question whether the defendant's evidence
was sufficient, under all the circumstances, to rebut the
*prima facie* proof of negligence, arising from the undis-
puted fact that the fire was communicated from the en-

gine, was clearly a question of fact for the jury, and as to which the judgment of the Appellate Court is conclusive." (*Louisville, Evansville and St. Louis Consolidated Railroad Co.* v. *Spencer*, 149 Ill. 97; *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Hornsby*, 202 id. 138.) As is said by the Appellate Court in their opinion deciding this case: "In the case at bar, it was for the jury to consider whether the explanation offered by appellant relieved it from the presumption of negligence raised by the undisputed facts. If appellant ran its car in an unsafe condition, evidence tending to show such condition was admissible under the second count."

It is said, however, on the part of the appellant that the declaration in this case charged specific acts of negligence, and that, therefore, Eick was not entitled to rely upon presumptive negligence. The cases of *West Chicago Street Railroad Co.* v. *Martin*, 154 Ill. 523, and *Chicago and Eastern Illinois Railroad Co.* v. *Driscoll*, 176 id. 330, are relied upon in support of this position. But the facts of the latter cases, when carefully examined, will show that they have no application to the case at bar. The declaration here charges that the appellant "carelessly, negligently and wrongfully ran and managed its car." If the appellant placed the sprinkling car under the control of a motorman, who lost control of it by his own carelessness, then the sprinkling car was not properly run and managed by the appellant. We think that the declaration is sufficiently general in its terms to take the case at bar out of the rule, announced in the cases last referred to. The second count of the declaration here does not charge that any servant of the appellant was guilty of specific acts of negligence, but charges that the appellant itself carelessly ran and managed its electric sprinkling car. The second count of the declaration does not state in or by what specific acts the carelessness in driving or managing the car was manifested, whether by running at a greater rate of speed than safety

or prudence required, or by improper and insufficient exercise of control on the part of the motorman, or by some other means. "Carelessness and impropriety are not descriptive of specific acts, but of a class of acts only, which may include an indefinite number of specific acts, each differing in its character from the others." (*Chicago, Burlington and Quincy Railroad Co.* v. *Harwood*, 90 Ill. 425).

We are of the opinion that there was sufficient evidence, tending to show that the appellant was guilty of such negligence as caused the injury, to justify a submission of the question of negligence to the jury.

Accordingly, the judgment of the Appellate Court is affirmed.                        *Judgment affirmed.*