### Robert J. Goldsmith, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 24,789.

1. STREET RAILROADS, § 133*—*when negligence of motorman and contributory negligence of pedestrian passing between cars are questions for jury.* In an action by a pedestrian against a street railroad company for personal injuries sustained by being caught between two street cars which were standing on the street at the time the motorman of the rear car motioned for plaintiff to pass between them, but the latter car of which started up, due to the motorman's coat sleeve catching on the controller, evidence *held* to present jury questions as to the negligence of defendant and contributory negligence of plaintiff.

2. STREET RAILROADS—*what constitutes negligence on part of motorman.* The wearing by a street car motorman of a coat sleeve of such a character that it will catch on the controller and start the car and cause injury to one passing in front of the car, is an act of negligence.

3. STREET RAILROADS, § 63*—*what care required in operation of cars.* A street car company is bound by the exercise of ordinary care to so operate its cars as to avoid injuring people.

4. APPEAL AND ERROR, § 1241*—*when instructions may not be complained of.* A party cannot complain of instructions given for the adverse party where his own instructions are open to the same criticism.

5. NEW TRIAL, § 107*—*when verdict may not be impeached by affidavit of juror.* The verdict of a jury, in an action against a street railroad company for personal injuries, may not be impeached by an affidavit of a juror containing the bald, unsupported statement that another juror stated, after the jury had retired,

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

that the defendant had probably made an effort to settle for a specified sum with plaintiff.

6. NEW TRIAL, § 107*—*inadmissibility of affidavits of jurors to impeach verdict.* Affidavits of jurors cannot be received for the purpose of showing cause for the setting aside of a verdict.

7. NEW TRIAL, § 107*—*when affidavits of jurors are inadmissible to impeach verdict.* Affidavits of jurors that some of the jurors experimented on a car controller with a coat sleeve in an attempt to demonstrate the effect of such contact cannot be used to impeach a verdict in an action against a street railroad company for personal injuries, alleged to be due to the sudden starting of a car caused by the motorman's sleeve catching on the controller.

Appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding. Heard in this court at the October term, 1918. Affirmed. Opinion filed April 7, 1919.

CHARLES LE ROY BROWN, for appellant; JOHN R. GUILLIAMS and JOHN E. KEHOE, of counsel.

JAMES C. MCSHANE, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

In an action for personal injuries plaintiff had judgment for $10,000 upon the verdict of a jury, and defendant comes to this court asking a reversal.

While plaintiff at about 7 o'clock in the morning of November 8, 1915, was crossing Fifty-First street, Chicago, between Calumet and Prairie avenue, in quest of his morning paper and breakfast rolls, he was beckoned by a motorman of defendant to continue his passage across the street by going between the car operated by this motorman and a car close to and in front of it; while so doing the car first mentioned suddenly and without warning to plaintiff started and he was caught between the bumpers of both cars and his left leg so badly crushed and maimed that it had to be amputated.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Defendant assigns and argues three propositions for reversal:

First. That its motion for a directed verdict in its favor should have been granted because plaintiff's injuries were the result of an accident and without any negligence on the part of defendant.

Second. Error in giving instruction No. 6 proffered by plaintiff.

Third. The refusal of the court to hear oral evidence of claimed misconduct on the part of jurors in an attempt to impeach their verdict in support of defendant's motion for a new trial.

We will discuss the foregoing in the order stated.

First. The negligence of defendant and the exercise of due care by plaintiff at and immediately preceding the time he suffered the injuries inflicted by defendant were questions of fact for the jury, and without reciting the evidence we will rest content by saying that an examination of it demonstrates that there was an abundance of evidence preponderating favorably for plaintiff sustaining the verdict of the jury, and from which they could not find otherwise than that the defendant was guilty of the negligence charged against it which resulted in plaintiff's injury, and that at the time of the occurrence plaintiff was in the exercise of due and ordinary care for his own safety.

Plaintiff in attempting to cross the street was arrested in his progress by the close proximity of the two cars between which his left leg was crushed. While plaintiff was standing still the motorman made a signal with his head to him to cross between the two cars, and on this invitation plaintiff made the attempt; while plaintiff was so doing, the motorman suddenly started the car without warning to plaintiff or any opportunity being given him to escape from the danger in which the conduct of defendant's motorman placed him.

In the light of plaintiff's evidence the jury undoubtedly disbelieved the motorman's narration of the occurrence. The whole situation considered, we think they were justified in so doing. The evidence of plaintiff and his witnesses in regard to the accident is not very seriously combated by defendant, but refuge from liability is sought in the contention that the occurrence was the result of a "pure accident" in no way attributable to any negligence on the part of defendant. This "pure accident" is said to have arisen from the fact that the coat sleeve of the motorman, in some unexpected and unexplained manner, came in contact with the car controller without the knowledge or conscious volition of the motorman, and started the car despite the intention of the motorman to keep the car at a standstill while plaintiff passed on his way.

We are unable to say that the jury were not fairly warranted in attributing to a negligent act of the motorman the catching of his coat sleeve in the car controller in such a way as to start the car. It stands to reason that the motorman's coat sleeve was as much within his control as any of the appliances by means of which he operated and controlled the movement of the car. He must be held to have known, or by the exercise of reasonable diligence he could have known, that to wear a coat with a sleeve in such a condition that it would start the car controller was an act of negligence for which the defendant is liable for the injuries resulting to plaintiff from such negligent act. To otherwise hold would be to exculpate the defendant from liability for its own negligent conduct, over which the plaintiff had no control, and leave the innocent victim to bear his injuries without compensation. The law would not tolerate such an apparent injustice, and we are unable to find any case cited by defendant's counsel where appliances within the control of a party and improperly used by the person in control of them, such improper use resulting in dam-

age to an innocent party, in which liability therefor was escaped by attributing the occurrence to a "pure accident."

The exercise of due care on the part of the motorman in managing his coat sleeve would have prevented the accident in question. It is idle to say, from the facts in this case regarding the motorman's coat sleeve, that the accident resulting can be considered as inevitable or unavoidable. There was no combination of extraordinary circumstances, not to be foreseen, which resulted in starting the car by the motorman's coat sleeve coming into contact with the car controller. The situation was one readily controllable by the motorman in the exercise of ordinary care, and his failure so to do was negligence for which the law makes defendant liable to respond in damages to the party injured as the result thereof. The court said in *Tracy v. Boston & N. St. Ry. Co.,* 204 Mass. 13:

"The jury were not bound to accept the explanation offered by the defendant, which was that the accident was caused by the blowing out of a fuse. Further, they may have thought, and if they did we cannot say that they were wrong, that, if the accident was caused by the blowing out of a fuse, it was negligence on the part of the defendant to use fuses that in blowing out were liable to produce results like those testified to."

By parity of reasoning in this case, it was negligence for defendant's motorman to so manipulate the sleeve of his coat that it came into contact with the car controller and started the car, resulting in injury to plaintiff.

Second. We think instruction No. 6, when read with all the other instructions given, including those of defendant, was not calculated to mislead the jury, and that as the declaration charged negligence generally, it was broad enough to include any act of negligence in the running, management or operation of the car. *Chicago City Ry. Co. v. Barker,* 209 Ill. 321.

It is the law that defendant is bound by the exercise

of ordinary care to operate its cars to avoid injuring people. Kindred expressions were used in instructions given at the instance of defendant. Its instruction No. 17 has in it the following words: The defendant's servants "were not required to exercise the highest degree of care to avoid injury to the plaintiff." Defendant's instructions numbers 14 and 16 contained similar references, so that were instruction 6 susceptible to the objections now raised, the law would not heed such objections, as instructions given at the instance of defendant are subject to the same or like criticism. *Consolidated Coal Co. of St. Louis v. Haenni,* 146 Ill. 614. The instructions considered as a whole correctly state the law applicable to the facts in evidence.

Third. The charges against certain jurors, without naming them, set forth in an affidavit by one of the trial counsel, were altogether too indefinite to justify an investigation of the jurors' conduct by the court. One juror was called to the witness stand and examined; he testified that after the jury had retired into the room to deliberate upon their verdict, a statement was made by some juror that the street car company had probably made an effort to settle with the plaintiff, $5,000 or $6,000 being mentioned as the sum. The testifying juror did not remember by whom the statement was made except that it was made by one of the jurors and that at that time there was no one else in the jury room but the jurors. The statement was a bald assumption, so far as the record discloses, without any foundation of fact upon which to base it. This testimony was clearly inadmissible to impeach the verdict. The rule stated in *Sanitary Dist. of Chicago v. Cullerton,* 147 Ill. 385, is still the rule in this jurisdiction regarding impeachment of the verdict of a jury. In that case the court said:

"This court, in an unbroken line of decisions from the case of *Forester v. Guard, Siddell & Co.,* Breese, 74, is committed to the doctrine that the affidavits of

jurors cannot be received for the purpose of showing cause for setting aside the verdict. There may be *dicta* in some of the cases intimating a contrary rule, but in every case where the question has been before the court, and determined, the principle has been adhered to."

Defendant claims, and offered to put three jurors upon the witness stand to so testify, that some of the jurors experimented on a car controller with a coat sleeve in an attempt to demonstrate the effect of such contact. This offer was upon objection refused. This ruling of the court was in consonance with the decisions in this State on that subject. It was held in *Heldmaier v. Rehor*, 188 Ill. 458, that the affidavits of jurors that during the trial they examined the wagon involved in the accident, were not admissible to impeach their verdict; so in *Wyckoff v. Chicago City Ry. Co.*, 234 Ill. 613, it was held that an affidavit to the effect that a juror told the affiant that he had visited the scene of the accident during the trial and that he formed his opinion in the case upon what he there learned, was insufficient to impeach the verdict.

In *City of Chicago v. Saldman*, 129 Ill. App. 282, this court held that the trial judge properly excluded an affidavit by a juror stating in effect that another juror had told him during the deliberation of the jury that he had consulted a physician during the trial upon the question as to whether a certain physical condition could result from a certain physical cause, and had communicated to the jury what the physician had said about it. On further appeal the judgment of this court was affirmed in 225 Ill. 625.

The court's ruling on the several matters proffered in an attempt to impeach the verdict of the jury was without error. *Peterson v. Chicago & O. P. El. R. Co.*, 176 Ill. App. 218.

There is no reversible error in this record, and the judgment of the Superior Court is affirmed.

*Affirmed.*