560    APPELLATE COURTS OF ILLINOIS.

Lindstrum v. Illinois Northern Utilities Co., 214 Ill. App. 560.

Robert Lindstrum, trading as Sterling Floral Company, Appellee, v. Illinois Northern Utilities Company, Appellant.

## Gen. No. 6,663.

1. GAS, § 15*—*application of rule res ipsa loquitur to leaks from gas pipes.* The rule *res ipsa loquitur* does not apply to all leaks from a gas pipe, and damage resulting therefrom.

2. DAMAGES, § 49*—*what is measure of damages for injury to plants in greenhouse by gas leakage.* In estimating damage to plants in a greenhouse by reason of gas leakage, the amount of the loss must be determined as of the time of the injury, and if the property destroyed has a market value, that is ordinarily the measure of recovery.

3. GAS, § 16*—*what not sufficient evidence to make prima facie case of negligence in permitting leakage.* Evidence that gas leakage from defendant's mains located near plaintiff's greenhouses for a period of about 2 weeks while the ground was frozen, caused injury to plaintiff's plants and shrubbery, was not of itself sufficient evidence of negligence to make a prima facie case.

4. DAMAGES, § 49*—*what is measure of damages for injury to plants in greenhouse by gas leakage.* In an action for damages to plants contained in a greenhouse, through gas leakage, the rule applicable was that the damages were to be measured by the value at the time of the injury of the plants destroyed, and the loss in value of plants injured but not totally destroyed, and in either case the basis was market value, unless it appeared there was no market value.

5. DAMAGES, § 206*—*when refusal of instruction, in action for injury to plants in greenhouse by gas leakage, not error.* In an action for damage to plants in a greenhouse, through gas leakage, it was not error to refuse to instruct that, as to plants not totally destroyed but more or less injured, the measure was the difference between the fair, reasonable, cash market value of such plants immediately before the injury, and the value, if any, after the injury, the evidence having shown that there was no market value for some of the plants injured.

6. DAMAGES, § 49*—*what is not proper measure of damages for injury to plants by gas leakage.* Cost of replacement was not a correct basis of valuation in an action for injury to plants by gas

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

leakage, where it did not appear that replacement was the proper and necessary thing to do under the conditions.

Appeal from the City Court of Sterling; the Hon. Carl E. Sheldon, Judge, presiding. Heard in this court at the April term, 1919. Reversed and remanded. Opinion filed July 18, 1919.

Henry S. Dixon and George C. Dixon, for appellant.

Philip H. Ward, for appellee.

Mr. Justice Carnes delivered the opinion of the court.

Robert Lundstrum, the appellee, owned a greenhouse in the City of Sterling, Illinois. The appellant company owned and operated a gas plant in that city. It did not serve appellee, but one of its pipes or mains ran near his greenhouse. About January 20, 1917, some plants there appeared stunted, and some died. About February 4th, appellee concluded the trouble was from escaping gas and reported the matter to appellant. It at once sent men to look for leaks in its mains. One was found about 50 feet from appellee's building, and immediately fixed. The record does not disclose the cause of the leak. Appellant had no other notice or knowledge of it. This action was brought to recover for that injury, the declaration charging that the defendant carelessly and negligently permitted its gas mains at that place to get into defective condition permitting gas to escape, and averring that the ground became frozen and covered with ice so that the gas found an underground channel from the place of the leak to the greenhouse and there arose to the surface, destroying some plants and injuring others. On a trial before the court without a jury there was a finding and judgment for the plaintiff for $2,130. The defendant appealed. The evidence shows the facts

562 APPELLATE COURTS OF ILLINOIS.

Lindstrum v. Illinois Northern Utilities Co., 214 Ill. App. 560.

practically as above stated. There was no attempt to show the cause of the leak; no evidence introduced showing, or tending to show, that the appellant had at any time in the construction or maintaining of the plant and pipe failed to exercise that degree of care usually observed by prudent business men under the same or similar circumstances, except appellee claims that the leak itself was sufficient evidence of negligence to make a prima facie case. He says it continued for over 2 weeks, and if there had been proper inspection it could have been discovered; that it must have resulted from a defective condition in the pipe or improper laying of the same; must have been through some fault or negligence of appellant, and cites *Rockford Gas Light & Coke Co. v. Ernst*, 68 Ill. App. 300, and *Aurora Gas Light Co. v. Bishop*, 81 Ill. App. 493, holding if the leak did occur through appellant's fault the company is liable, and if a reasonable inspection of the pipes would have discovered a leak, it is liable. These cases mean if the defendant was negligent there was a cause of action, but neither case holds that evidence of the leak was alone sufficient to make a prima facie case. Appellee also cites numerous cases from other jurisdictions holding that much diligence is required of parties dealing with dangerous agencies, like gas, for profit, which mean only that ordinary care in such cases requires a degree of precaution measured by the danger of the situation. This record shows no more reason for inspecting this part of the mains or pipes than any other part during the 2 weeks when the leak could have been found. It would have been a foolish act for appellant in January, with the ground covered with snow and ice, to send a force of men to inspect all its gas pipes extending underground through the city. In the present case, as in *People's Gas Light & Coke Co. v. Porter*, 102 Ill. App. 461, the finding and judgment can, as there said, only be sustained on the theory (1) that the defendant is liable as an insurer of the

absolute sufficiency and safety of the work; or (2) that the escape of gas is, of itself, sufficient to charge the defendant with negligence. It was there held that the defendant, a gas company, was not liable as an insurer, and that position is supported in many later cases. (32 L. R. A. [N. S.]) 810, note; *Greancy v. Holyoke Water-Power Co.,* 174 Mass. 437, 54 N. E. 880; *Hartman v. Citizens' Natural Gas Co.,* 210 Pa. 19, 59 Atl. 315; *Maxwell v. Coffeyville Mining & Gas Co.,* 68 Kan. 821, 75 Pac. 1047; *Torrans v. Texarkana Gas & Electric Co.,* 88 Ark. 510, 115 S. W. 389; *People's Gas Light & Coke Co. v. Amphlett,* 93 Ill. App. 194.) The court in holding that the company was not liable as an insurer said on page 468: "Its duty was to furnish reasonably good and sufficient material suitable for the purpose for which it was intended and used, and to put the material into place in a good and workmanlike manner. If it fulfilled this duty it was not guilty of negligence." To which should be added in the present case the duty to use reasonable care and diligence in inspecting its pipes. As to the second theory the court said: "The doctrine expressed by the words *res ipsa loquitur* has no application to such a case as the present."

When an injury is shown, and that it arose from something entirely within the control of the defendant or from some danger which it was his duty to anticipate and provide against, a presumption of negligence arises and makes a prima facie case for the plaintiff, which the defendant must meet, and, if not met, justifies a verdict for the plaintiff, is a doctrine that has been applied again and again in actions by passengers against carriers. (*Vischer v. Northwestern El. R. Co.,* 256 Ill. 572, 578; and cases there cited.) It has also been applied where no special relation like that of passenger and carrier exists between the parties, like those used for illustrations in *North Chicago St. Ry. Co. v. Cotton,* 140 Ill. 486, where plaintiffs were injured by

heavy objects falling upon them from above. In that connection the court states the rule on page 494: ''There must be reasonable evidence of negligence. But where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.'' It is said in *Chicago City Ry. Co. v. Barker,* 209 Ill. 321, 326, ''when the thing is shown to be under the management of the defendant, or his servants, and the accident is such, as in the ordinary course of things does not happen if those, who have the management, use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.  *  *  * Where the accident is one which would not, in all probability, happen, if the person causing it was using due care, and the actual machine, causing the accident, is solely under the management of the defendant,  *  *  * the mere occurrence of the accident is sufficient prima facie proof of negligence to impose upon the defendant the onus of rebutting it.'' And in *Illinois Cent. R. Co. v. Swift,* 213 Ill. 307, 316, the court says the doctrine of *res ipsa loquitur* only applies when the accident is such as in the ordinary course of things does not happen if those in control use proper care. The rule *res ipsa loquitur* does not apply to all leaks from a gas pipe, and damage resulting therefrom. There may be cases where the situation requires sufficient diligence of construction and inspection to practically insure immunity from leaks, and therefore come within the above definitions; but as a general rule applied to gas mains extending for miles through cities and villages it is common knowledge that such diligence is neither practiced nor required. The author in 29 Cyc. cites *People's Gas Light & Coke Co. v. Porter, supra,* on the

proposition that the escape of gas from a broken pipe creates no presumption of negligence, but notes a conflict of authority whether it might be some evidence of negligence. In 1 Thompson on Negligence, sec. 719 (published in 1901), after stating the rule requiring much vigilance and skill in handling gas, it is said: "But in the absence of statute, we find no suggestion in any book, English or American, that such a company is responsible for damages caused by escaping gas, on any other principle than a want of ordinary care and skill in its management,—terms which exact a degree of vigilance and technical knowledge in proportion to the dangerous character of the substance in which they deal, and according to the circumstances of each case." In White's Supplement to the above work published in 1907, he omits in section 719 the above language quoted from the original, but in a note cites *People's Gas Light & Coke Co. v. Amphlett, supra,* on the proposition that the mere fact of the ownership of the gas in the pipe will not of itself render the company liable for injuries caused by its escape unless the company is guilty of negligence. It may not be true that there is now no authority, American or English, supporting the application of the doctrine *res ipsa loquitur* to leaking gas mains. We have discovered some cases where it was said to be some evidence of negligence, which, taken with other evidence, made a prima facie case, but the great weight of authority is that a prima facie case can only be made by evidence other than the mere occurrence showing some neglect on the part of the defendant. We have found no case similar to this where the mere proof of the accident has been held sufficient evidence of negligence to make a prima facie case. Each case must stand on its own facts. Gas may be used at such times and places as to require in the exercise of ordinary care very frequent inspection. There may be cases where, because of disturbances of the

566    APPELLATE COURTS OF ILLINOIS.

Lindstrum v. Illinois Northern Utilities Co., 214 Ill. App. 560.

ground in the vicinity of the pipes, immediate and constant inspection is required for a limited time. A contention in such cases that the mere escape of gas is evidence of neglect of the required inspection might seem at least plausible. But we know of no authority, and see no reason for holding appellant guilty of actionable negligence on the facts disclosed by this record; therefore, the judgment must be reversed. As the case was tried below on the theory that the maxim *res ipsa loquitur* applied, and perhaps for that reason no effort made to introduce specific proof of any act or omission of appellant causing the break in the pipe, we remand the case that appellee may have an opportunity, if he wishes, to try the question of negligence under the rules here announced.

The damages sustained by appellee were in part from destruction of plants, and in part from damages to other plants. It appeared that there was at the time a market for some of these plants, and not for others. There was evidence as to market values, and evidence as to cost of replacement; also evidence as to the value of space in the greenhouse that appellee lost the use of. Appellant asked the court to hold (1) that the measure of damages, if any, as to the plants totally destroyed was the fair, reasonable, cash market value of such plants immediately prior to the time of their destruction; and (2) that as to the plants not totally destroyed but more or less injured, the measure was the difference between the "fair, reasonable, cash market value of such plants immediately before such injury, and the value, if any, of such plants after such injury." The court held the first proposition and refused the second. Error is assigned on such refusal. It will appear on consultation of any textbook on the subject that a great variety of similar questions have been answered by the courts, and at first glance it may seem that contradictory and irreconcilable conclusions have been

SECOND DISTRICT—JULY, 1919.        567

Lindstrum v. Illinois Northern Utilities Co., 214 Ill. App. 560.

reached in different jurisdictions, but this apparent conflict mostly disappears when the facts under consideration, are carefully noted. The greatest difficulty has arisen on the admissibility and effect of evidence as to the value at the time of injury. The effort is to ascertain what damages have naturally and proximately resulted from the injury and permit a recovery on that basis. A discussion of the rule governing such investigation and very full citation of authority is found in 17 Corpus Juris, beginning on page 887. There is also a valuable note in 37 L. R. A. (N. S.) 976, referring to former notes on the subject in that series of reports. There is no question that the amount of the loss must be determined as of the time of the injury. If the property destroyed has a market value, that is ordinarily the measure of recovery. With growing animals, like colts, calves and pigs, there is generally no occasion to inquire what it would cost to mature and market them because they have market value at the time in question, and whether destroyed or partially destroyed the loss can be estimated on a consideration of market values. But sometimes, as in the case of growing cabbages (*Economy Light & Power Co. v. Cutting*, 49 Ill. App. 422), there is no market value; and it was said in that case that the value to be ascertained was of the crop ''as it was when destroyed, with the right to the owner to mature and harvest or gather it at the proper time''; that it was a ''matter of estimate or conclusion of the mind to be arrived at from all the facts which would affect it.'' An instruction was there approved which informed the jury as to the crops, fully destroyed, the measure of damages was, first, the rental value of land the plaintiff was prevented from tilling or using for the rest of the season; second, for land where the crop was up, more or less matured, the rental value for the rest of that season, the cost of labor, seed and plants expended thereon, and

the cost of any labor bestowed thereon after the plant-
ing; or, in lieu of such compensation specified in the
second paragraph, the "value of the crop at the time of
its destruction, with the right to the owner thereof to
mature the crop and harvest or gather it at the proper
time." This case was cited and its reasoning adopted
by our Supreme Court in *St. Louis Merchants' Bridge
Terminal Ry. Ass'n v. Schultz,* 226 Ill. 409. Cases
arise where the rental value of the land with the cost of
labor expended before the injury is the reasonable and
proper way of determining the damage. (*Young v.
West,* 130 Ill. App. 216.) Helpful discussions on the
questions involved may be found in *Jones v. Sanitary
Dist. of Chicago,* 252 Ill. 591; *McDonald v. Illinois Cent.
R. Co.,* 179 Ill. App. 242; *Adams v. Stadler,* 78 Ill. App.
432. We think the rule applicable to this case, if ap-
pellee is entitled to damages, is that they are measured
by the value at the time of the injury of the plants de-
stroyed, and the loss in value to plants injured but not
totally destroyed; that in either case the basis of the
valuation is market values, unless it appears there was
no market value; and as to such plants, the real value
and loss of value should be ascertained under the rules
announced in the Illinois cases heretofore referred to,
applied to the different conditions of plants at the time.
The court did not err in refusing to hold appellant's
second proposition basing the damages on a consider-
ation of market values, because under the evidence it
appeared there was no market value for some of the
plants injured. We do not agree with appellee's coun-
sel that the cost of replacement is a correct basis of
valuation. There may be instances where the natural
and ordinary way of treating the situation would be to
replace the plants, but generally in case of loss to grow-
ing plants it would not be practical to replace them,
and the cost of replacement should not be adopted as a
basis where it does not appear that replacement is the
proper and necessary thing to do under the conditions,

and ordinarily attention should be confined entirely to market values unless it appears that there was no market value for the article in question. In the present case the same rule does not apply to all the plants destroyed or injured. The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views here expressed.

*Reversed and remanded.*